**In re Betty Jo HANEY, Debtor.**

No. 01–35985.

United States Bankruptcy Court, N.D. Ohio, Western Division.

Sept. 23, 2002.

Derrick V. Rippy, Cleveland, OH, for Ira Bodenstein.

### MEMORANDUM OF DECISION

MARY ANN WHIPPLE, Bankruptcy Judge.

This case involves two common issues surrounding the services of a bankruptcy petition preparer to an individual chapter 7 debtor. First, does the Bankruptcy Code prohibit a bankruptcy petition preparer from handling a money order made payable to the clerk of the bankruptcy court for the filing fee required to commence a debtor's bankruptcy case? Second, what fee measures the value of the services of a bankruptcy petition preparer in preparing the documents necessary to prosecute an individual debtor's chapter 7 case?

The United States Trustee ("UST") raises these issues in his Motion to Fine Bankruptcy Petition Preparer Donald Harris and Order the Refund of Excessive Fees ("Motion") [Doc. # 11]. The UST filed an identical motion against Donald Harris ("Mr. Harris") in another case pending in this court, *In re Shirley J. Alexander,* 284 B.R. 626 (Bankr.N.D.Ohio 2002). The court held a joint evidentiary hearing on the motions; however, separate orders will be entered in each case.

This court has jurisdiction over Debtor Betty Jo Haney's ("Debtor" or "Ms. Ha-

ney") chapter 7 bankruptcy case under 28 U.S.C. §§ 1334 and 157 and General Order 84–1, the general order of reference in this district. The Motion is a contested matter and a core proceeding, which this court may hear and determine under 28 U.S.C. § 157(b)(2)(A). The court has examined the submitted written arguments, weighed the credibility of the hearing witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the following reasons, the court finds that the Motion should be **GRANTED** in part, and **DENIED** in part. This Memorandum of Decision constitutes the court's finding of facts and conclusions of law on the Motion under Fed.R.Civ.P. 52(a), which applies to this contested matter pursuant to Fed. R. Bankr.P. 9014 and 7052.

### Findings of Fact:

Ms. Haney testified at the hearing. Mr. Harris did not testify, but he made statements and arguments on his own behalf, both orally and in writing, which could be construed as binding judicial admissions against him to the extent of any facts involved.[1] *Cf. In re Stephenson,* 205 B.R. 52, 55 n. 2 (Bankr.E.D.Pa.1997)(statements of counsel not evidence, but may be binding judicial admissions); *In re Menell,* 160 B.R. 524, 525 n. 3 (Bankr.D.N.J.1993), *aff'd,* 37 F.3d 113 (3d Cir.1994)(concessions of counsel in open court are binding judicial admissions). There were some documents referred to at the hearing, but none were offered or admitted into evidence. So except as otherwise specified below, these findings of fact are based upon Ms. Haney's testimony and reasonable inferences therefrom. Although Ms. Haney's

memory was not good with respect to dates and sequences of events, the court found her testimony overall to be credible. This is so notwithstanding Mr. Harris' effort to show on cross-examination that her anger at the delayed filing of her case, and his referral of her debt to him to a collection agency, was influencing her testimony adversely to him.

Ms. Haney lives in Sandusky, Ohio, where Mr. Harris also has his office. [Doc. # 1 at 1]. She first met with Mr. Harris in July, 2001. She had been referred to him by co-workers. At that meeting, Mr. Harris explained to Ms. Haney that he was a bankruptcy petition preparer and gave her a printout of his charges. Ms. Haney was firm in her testimony that she paid Mr. Harris $100.00 in cash at that first meeting.

A short time later, sometime in August, 2001, Ms. Haney paid Mr. Harris an additional $200.00 for what she repeatedly described during the hearing as the "retaining fee." On cross-examination by Mr. Harris, Ms. Haney acknowledged that the "$200 retaining fee" was a money order payable to the clerk to be delivered to the court. Although she did not remember when she actually signed documents to commence her case, Ms. Haney testified more than once that she "figured the bankruptcy would take effect then" and "that was when I thought it would be filed." It was Ms. Haney's understanding that her payment of the "retaining fee" would stop the garnishment of her wages. So when her paycheck continued to be garnished, she became upset and contacted Mr. Harris again in August or September. Ulti-

---

**1.** *James Hammond, who has his own business and works as a courier for Mr. Harris and others, also testified at the joint hearing. His testimony did not specifically relate to the Motion in Ms. Haney's case. While he testified generally about how he routinely handled* bankruptcy court filings he delivered to court for Mr. Harris, there is no evidence in the record that he delivered Ms. Haney's petition to the clerk for filing. The court did not hear anything in his testimony that contributed to the court's findings of fact in this case.

mately she discovered, when she received the filed paperwork back from Mr. Harris, that her chapter 7 case was not filed until September 25, 2001. Ms. Haney did not personally file or mail her documents to the court, as she understood that Mr. Harris would bring or otherwise deliver them to the court. Ms. Haney was clearly upset that the case was not commenced until September 25th, and that her wages continued to be garnished even after she paid the "retaining fee." She felt that "action should have taken place more quickly" because she paid the "retaining fee to stop the garnishment" of her wages.

The record concerning the fees paid to Mr. Harris is confusing in two respects. The first respect is what Ms. Haney and Mr. Harris agreed upon as the fee amount for Mr. Harris' document preparation services. The UST contends that the fee agreed to, and paid, was $650.00. [UST's Post–Hearing Brief on Motion to Fine Bankruptcy Petition Preparer Donald Harris and Order the Refund of Excessive Fees, Doc. # 15, at 2, 5]. Ms. Haney testified that she was quoted a fee of $650.00, but that Mr. Harris "agreed to take" $550.00. The court finds that the originally agreed-upon amount was $550.00, not $650.00.

The second respect in which the record is confusing is what amount was actually paid by Ms. Haney to Mr. Harris, or at least sought to be collected by Mr. Harris, irrespective of the original agreement. Specifically, the record is unclear whether the $200.00 filing fee for commencing the chapter 7 case was ultimately treated by Mr. Harris as part of, or was in addition to, the agreed "fee" amount of $550.00. Ms. Haney's recollection was clear that she had initially paid $100.00 in cash, and then the $200.00 "retaining fee." Sorting through her testimony, it appears she only transmitted $300.00 directly to Mr. Harris

before the commencement of the case, her initial $100.00 cash payment and then the $200.00 money order for the "retaining fee." Ms. Haney said she did not receive a receipt for the $200.00 money order, from which the court infers that she did receive one for the $100.00 cash payment. However, there were no receipts or statements of account offered or admitted into evidence. The court cannot find from the record that Ms. Haney made a second $200.00 lump sum payment to Mr. Harris, which would be consistent with a total service fee, *in addition to the case filing fee*, of $550.00.

The Disclosure of Compensation of Bankruptcy Petition Preparer completed by Mr. Harris, and filed with Ms. Haney's petition on September 25, 2001, stated that $550.00 was charged, $300.00 had been collected and a balance of $250.00 was due. [Doc. # 1]. The court takes judicial notice of Mr. Harris' filed Disclosure of Compensation as being in the record, Fed.R.Evid. 201(a),(b) and (c); *In re Bestway Products, Inc.*, 151 B.R. 530, 540–41 (Bankr.E.D.Cal. 1993), and finds further that it is at least an evidentiary admission by Mr. Harris. *Compare Jenkins v. Tomlinson (In re Basin Resources Corp.)*, 182 B.R. 489, 493 (Bankr.N.D.Tex.1995)(statements in proof of claim and objection are binding judicial admissions) *with In re Cobb*, 56 B.R. 440, 442 n. 3(Bankr.N.D.Ill.1985) (statements in schedules are evidentiary, not binding judicial, admissions in adversary proceeding on party making them). This document confirms Ms. Haney's testimony that she had transmitted a total of $300.00 to Mr. Harris before commencement of her case.

Ms. Haney's testimony and Mr. Harris' statements at the hearing also revealed that approximately $250.00 was being collected post-petition from Ms. Haney, at the rate of $25.00 every two weeks, through a collection agency in Sandusky called "State

Collections." It does appear that some interest or other charges, perhaps for courier fees, had been included in the balance being collected by the collection agency. The post-petition amount actually due was identified as $258.22, without any explanation as to the odd amount. Ms. Haney testified that "he [Mr. Harris] took me to a collection agency for $254.00" and she later identified that amount as being $261.00.[2] By the time of the hearing, Ms. Haney understood that her remaining debt to Mr. Harris was down to $150.00, as she had already made four $25.00 payments to the collection agency. A fifth such payment was due that same week. The court therefore finds that the total post-petition balance being collected by or on behalf of Mr. Harris was at least $258.22, and that Ms. Haney's bi-weekly post-petition payments of $25.00 should be subtracted from that amount, not added to it, in ascertaining the total fee actually being collected by Mr. Harris.

The court finds that, of the $550.00 fee agreed upon, the amount actually being collected by Mr. Harris from Ms. Haney as a fee for his services as a petition preparer was $358.00 ($100.00 pre-petition cash payment plus another approximately $258.00 being collected post-petition). The court further finds that the $200.00 "retaining fee" Ms. Haney transmitted to Mr. Harris pre-petition was not actually collected by Mr. Harris as a document preparation fee; rather, he transmitted it to the court as the required filing fee to commence Ms. Haney's chapter 7 case, in the form of a money order payable to the clerk of court.[3]

### Law and Analysis:

The Bankruptcy Code recognizes the reality that *pro se* debtors often turn to non-lawyers for assistance in filing bankruptcy. Rather than prohibiting such assistance and, as a realistic matter, watching it flourish more dangerously underground, Congress chose to force it into the light by defining persons who provide such assistance and regulating their conduct in 11 U.S.C. § 110. *Cf. In re Guttierez*, 248 B.R. 287, 297 (Bankr. W.D.Tex.2000) (section 110 does not authorize or legitimize quasi-legal assistance as a profession under the rubric of bankruptcy petition preparer). Congress enacted § 110 in 1994 to "address the growing problem of bankruptcy [petition] preparers who abuse the system in the course of preparing documents for the debtors to file." 2 *Collier on Bankruptcy*, ¶ 110.LH (Lawrence P. King ed.,15th ed. (rev.) 2001) (citing S.Rep. No. 103–168, 103rd Cong., 1st Sess. 51 (1993)). Section 110 requires petition preparers to take certain actions and proscribes

---

2. Mr. Harris' post-petition collection of his fee using a collection agency is troublesome to the court. There is a substantial argument that Mr. Harris was a pre-petition creditor of Ms. Haney at the commencement of the case. Therefore, his unpaid fee claim would accordingly have been discharged in the chapter 7 case. Post-petition collection of attorney fees from chapter 7 debtors by their lawyers raises this same issue, and results in conflicting case law. *Compare Hessinger & Assocs. v. U.S. Trustee (In re Biggar)*, 110 F.3d 685 (9th Cir. 1997) (unpaid fees for pre-petition services of bankruptcy counsel are subject to discharge, and subsequent collection efforts violate the automatic stay and discharge injunction) *with*

*Bethea v. Robert J. Adams & Assocs. (In re Bethea)*, 275 B.R. 284, 295 (Bankr.N.D.Ill. 2002) (the statute treats fee agreements with bankruptcy counsel differently than pre-petition claims subject to discharge). Nevertheless, this issue has not been raised or briefed by the parties and the court will not decide it in this case.

3. Based on the court's factual findings, Mr. Harris' Disclosure of Compensation is inaccurate, because it discloses a petition preparation fee of $550.00, not the $358.00 which the court now finds he is collecting from Ms. Haney as his service fee.

other conduct by petition preparers, while adding sanctions for noncompliance and mechanisms for court oversight.

Section 110(a)(1) defines a "bankruptcy petition preparer" as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." In turn a "document for filing" means "a petition or any other document prepared for filing by a debtor in a United States Bankruptcy Court...in connection with a case under this title." 11 U.S.C. § 110(a)(2). There is no dispute that Mr. Harris is a petition preparer as defined by the statute and that he acted as such in working for Ms. Haney.

## I. 11 U.S.C. § 110(g): Filing of Petition and Collection of Court Fees

The UST argues that both Mr. Harris' handling of the $200.00 money order for Ms. Haney's case filing fee, and his filing or arranging for the physical filing of the petition for Ms. Haney, are prohibited by 11 U.S.C. § 110(g), which provides:

> (g)(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.
>
> (2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

■ The court must use basic principles of statutory interpretation, the purpose of which is to discern what Congress intended, in applying § 110(g)(1) to Mr. Harris' conduct in Ms. Haney's case. The starting point for deciding a dispute over the interpretation of a statute is, of course, the words of the statute itself and their plain meaning. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the statutory language is clear enough to discern congressional intent, the court's analysis ends

there and the court must enforce the statute according to its terms, without looking beyond the language of the statute such as to legislative history or pre-Code practice. *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir.1998). As the Supreme Court holds, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enters., Inc.*, 489 U.S. at 242, 109 S.Ct. 1026 (citation omitted).

### A. Filing Debtor's Petition

The record does not show exactly how Ms. Haney's petition got filed, other than that she had nothing to do with it. It is reasonable to infer that Mr. Harris brought it, mailed it or otherwise had it delivered it to the court. There is, however, nothing in the language of § 110(g)(1), or any other part of § 110 or the Bankruptcy Code, that specifically prohibits a petition preparer from handling the physical filing of the petition or any other documents. The proscription of § 110(g) addresses only the handling of the petition filing fee, the limitation of which may certainly create certain practical difficulties, depending on how it is interpreted, that would effectively prohibit Mr. Harris from assisting in the filing process as he has done in this case. *See In re Doser*, 281 B.R. 292, 310–11 (Bankr.D.Idaho 2002).

Indeed, Congress actually says very little in the language of § 110 about specifically what services a petition preparer can or cannot permissibly render to debtors. There is oft-quoted language from the House Judiciary Committee's Report on the Bankruptcy Reform Act of 1994 that "while it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt

to provide legal advice and legal services to debtors." 140 Cong. Rec. H. 10752, Sec. 308 (103d Cong., 2d Sess., Oct. 4, 1993). Notably, the statute does not in fact say that. Rather, Congress has been careful in 11 U.S.C. § 110(k) not to preempt and to preserve determining what constitutes the unauthorized practice of law as the province of other statutes and rules, as follows:

> Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

Traditionally, state law defines what constitutes the unauthorized practice of law by bankruptcy petition preparers, like Mr. Harris, who are not licensed attorneys. *See Guttierez*, 248 B.R. at 294–97(applying Texas law prohibiting the unauthorized practice of law in the context of § 110(g) issues).

■ Ohio law defining and prohibiting the unauthorized practice of law applies in this case. The Ohio Constitution vests the regulation of the practice of law in Ohio exclusively in the Ohio Supreme Court. Ohio Const. art. IV, § 5. In turn, the Ohio Supreme Court has, by its own acknowledgment, defined the practice of law expansively. *Sharon Village Ltd. v. Licking Cty. Bd. of Revision*, 78 Ohio St.3d 479, 678 N.E.2d 932, 934 (1997). The practice of law in Ohio is not limited to the conduct of cases in court, but embraces "the preparation of pleadings and other papers incident to actions," "the management of such actions," and "in general all advice to clients and all action taken for them in matters connected with the law." *Id.* (quoting *Land Title Abstract & Trust Co. v. Dworken*, 129 Ohio St. 23, 193 N.E. 650 (1934) (paragraph one of the syllabus)). The Ohio Supreme Court has repeatedly applied this definition and described the

actions of preparing *and* filing documents to commence actions on behalf of others as engaging in the unauthorized practice of law. *Id.; Disciplinary Counsel v. Coleman*, 88 Ohio St.3d 155, 724 N.E.2d 402, 404 (Ohio 2000) (Ohio law prohibits a person from representing another person by *commencing*, conducting or defending any action in which the first person is not a party).

■ Mr. Harris has prepared *and* filed documents in a court of record, to commence a formal judicial proceeding, on behalf of Ms. Haney. Under Ohio law, as described above, he may very well be engaging in the unauthorized practice of law, an issue that has not been directly raised by the UST. Nevertheless, the court cannot make the leap to interpret § 110(g) itself as prohibiting the assistance Mr. Harris provided to Ms. Haney in the physical filing of her petition. The plain meaning of the language does not have room in it to find such a prohibition, and the literal application of this language to exclude such a prohibition from the reach of § 110(g) does not produce a "result demonstrably at odds with the intentions of the drafters" because of the presence of § 110(k). Congress could have directly prohibited and penalized the act of filing of petitions by petition preparers as a matter of federal bankruptcy law, but chose not to in deference to other applicable laws. *But see, e.g., Guttierez*, 248 B.R. at 294–95 (a petition preparer who engages in the unauthorized practice of law commits a fraudulent or deceptive act within the general proscription of 11 U.S.C. § 110(i)(1)). The court therefore does not find that Mr. Harris' conduct in overseeing the physical filing of Ms. Haney's petition is a separate, sanctionable violation of § 110(g)(1) as alleged by the UST.

## B. Handling of Filing Fee

■ Congress did determine it necessary, through § 110(g), to regulate a petition preparer's handling of filing fees as a matter of federal bankruptcy law, perhaps identifying a void in other law that needed to be filled to protect debtors, regardless whether state law permits petition preparers to physically file the petition or not. *See Guttierez*, 248 B.R. at 297 (section 110(g) is remedial consumer protection statute).

Courts differ on how this provision should be interpreted. The majority of courts, and one influential commentator, that have considered what conduct § 110(g)(1) proscribes have construed the phrase "collect or receive any payment" as barring the petition preparer from acting even as an intermediary in submitting to the court a check for filing fees made out to the clerk and signed by the debtor. *See, e.g., Doser*, 281 B.R. at 310–12 and cases cited therein; *In re Green*, 197 B.R. 878 (Bankr.D.Ariz.1996); 2 *Collier, supra*, at ¶ 110.07 (citing *In re Jones*, 227 B.R. 704 (Bankr.S.D.Ind.1998)). That is essentially what Mr. Harris did with the court filing fee for Ms. Haney's case. He accepted from her and held the money order payable to the clerk for the $200.00 filing fee, and then effected the filing of her petition, along with the filing fee. The UST asserts that this is the correct interpretation of § 110(g)(1).

But at least one court has construed § 110(g) more liberally, as prohibiting only the petition preparer's depositing of funds received from the debtor for filing fees into the petition preparer's own account, and then payment of fees by the petition preparer out of that account, as a lawyer would out of a trust account. *In re Reed*, 208 B.R. 695 (Bankr.N.D.Cal.1997). The *Reed* court reasoned that by simply handling the check, made out to the clerk, the preparer is prohibited "from enjoying any benefit from the use of debtor's funds, or from commingling it with any other funds," which was what Congress was really concerned about stopping. *Id.* at 697. Mr. Harris asserts that *Reed* correctly interprets § 110(g)(1), and that he has therefore not violated the statute.

The court finds that the majority view better represents the plain meaning of § 110(g) and Congress' intentions as expressed therein. In choosing the words "collect or receive any payment" with respect to the petition filing fee, Congress has selected common terms in the disjunctive, designed to sweep broadly and not so narrowly as the *Reed* court determines. The words collect and receive do not seem to have any particular legal definition, but an ordinary definition of receive includes the concepts of simply "tak[ing] possession or delivery of," "taking in: to act as a receptacle or container for" and "to come into possession of." *Webster's Third New International Dictionary* 1894 (1986). Ms. Haney's money order was a payment for the filing fee for her petition, and in accepting it and controlling it on her behalf, Mr. Harris clearly took possession and delivery of it within the plain meaning of § 110(g). The court finds it unnecessary to look beyond the face of the statute, to the limited legislative history or to other sources, to discern Congress' intent as expressed in § 110(g). Mr. Harris' conduct in accepting and handling the $200.00 money order, payable to the clerk of court, for Ms. Haney's petition filing fee therefore violated Section 110(g)(1).

The *Reed* court, and Mr. Harris, assert that such an interpretation is illogically strict and unnecessary to prevent real "mischief" by petition preparers, so that this result must necessarily be at odds with congressional intent. To the contrary, this case graphically illustrates the

wisdom of § 110(g)(1) and the majority view of its proper interpretation. There were several problems created by Mr. Harris' handling of Ms. Haney's $200.00 filing fee, even though the funds were not deposited in his account. The evidence showed that Ms. Haney was unclear about what services she had paid for, what various payments were intended to cover and especially when her petition would be filed. That confusion manifested itself in just trying to ascertain here in court what she paid Mr. Harris and when. Ultimately, the confusion and delay resulted in the unnecessarily prolonged garnishment of her wages, to her obvious detriment. In difficult financial circumstances already and having turned her $200.00 filing fee payment over to Mr. Harris, she was in no realistic position to negotiate termination of his services, and file herself or seek other alternatives, when the filing delay became a serious problem. By controlling her filing fee, whether it was deposited in his account or not, Mr. Harris received the collateral benefit of having a captive client without practical recourse to do anything differently. *Guttierez*, 248 B.R. at 292, n. 1; *Doser*, 281 B.R. at 312, n. 20 (clients of petition preparers lack remedies available to clients of attorneys). The problems arising from Mr. Harris' handling of Ms. Haney's filing fee are the type of problems Congress undoubtedly intended to protect consumer debtors from encountering.

 In considering § 110(g)(2) in light of a(g)(1) violation, as the UST points out, the word "shall" in subsection (g)(2) mandates imposition of a fine once a violation exists, as it does here. *In re Hartman*, 208 B.R. 768, 779 (Bankr.D.Mass. 1997). The amount of the sanction is, however, within the court's discretion. *Id.* (citing *In re 1095 Commonwealth Ave. Corp.*, 204 B.R. 284, 299 (Bankr.D.Mass. 1997)). In this case the court assesses a fine of $20.00. The reason for the relatively small amount of the sanction is that case law does exist that supports Mr. Harris' *modus operandi* as to filing fees, with no known controlling or other authority in this district or circuit to the contrary. *See Doser*, 281 B.R. at 313 (fine of $10.00 imposed for § 110(g)(1) violation, for the same conduct as Mr. Harris', as an issue of first impression). With this decision, however, any future handling of court fees will result in more severe sanctions.

## II. 11 U.S.C. § 110(h)(2): Turnover of Excessive Fees

Section 110(h)(2) authorizes the court to disallow any excessive fees paid to a bankruptcy petition preparer and to order the preparer to turnover the excess to the panel trustee. Section 110(h)(2) also states that an individual debtor may, under 11 U.S.C. § 522(b), exempt any funds so recovered. Furthermore, under § 110(h)(4), the failure to comply with a turnover order within 30 days will subject the preparer to a fine of up to $500.00.

 At the joint evidentiary hearing on the Motion the court questioned which party had the burden of proving the reasonableness of Mr. Harris' fees. There is no guidance in the statute. The UST offered to carry the burden on this issue; however, the court finds that it is Mr. Harris' burden to prove the reasonableness of his fees. The United States Court of Appeals for the Seventh Circuit held, in a case determining the reasonableness of a bankruptcy petition preparer's fees, that "the person seeking fees has the burden of establishing that he or she is entitled to them once a question regarding their reasonableness has been raised." *In re Kathy Froehlich*, 23 Fed. Appx. 572, 574, 2001 WL 1530594 (7th Cir.2001)(citing *In the Matter of Geraci*, 138 F.3d 314, 318 (7th Cir.1998)); *Doser*, 281 B.R. at 313.

This court also finds review of petition preparer's fees analogous to cases under 11 U.S.C. § 329(b), which authorizes the court to review debtor's counsel's fee transactions for "reasonableness." In that context the burden of proving that the agreed compensation does not exceed the reasonable value of the services rendered is on the attorney. *In re Mondie Forge Co.*, 154 B.R. 232, 237 (Bankr.N.D.Ohio 1993); *In re Swartout*, 20 B.R. 102, 105 (Bankr.S.D.Ohio 1982); *Cohn v. U.S. Trustee (In re Ostas)*, 158 B.R. 312, 323 (N.D.N.Y.1993). The burden of proving the reasonableness of fees collected from chapter 7 debtors in connection with their bankruptcy cases is most logically placed on the recipient, in this case a petition preparer and not an attorney.

The UST met its burden of going forward to establish that Mr. Harris was acting as a petition preparer and the fee he charged, raising a substantial question about the excessiveness of that fee. The ultimate burden of proof of the reasonableness of the fee charged Ms. Haney then shifted to and rested with Mr. Harris. The court finds that Mr. Harris has not met this burden. There is insufficient evidence in the record to support the fee in excess of $350.00 that Mr. Harris has collected or is collecting from Ms. Haney.

In determining a reasonable fee for a petition preparer's services, the starting point for most courts has been evaluating what services a petition preparer is legally permitted to provide, and then establishing the value of those services. This approach makes obvious sense, as allowing compensation for services one is not legally permitted to provide would encourage violations of the law and conflict with Congress' stated goal of generally preventing fraudulent, unfair and deceptive acts by petition preparers. 11 U.S.C. § 110(i)(1). As already discussed, Mr. Harris is limited to providing services that do not constitute the unauthorized practice of law in Ohio. Given the Ohio Supreme Court's expansive definition of what constitutes the unauthorized practice of law, just as courts in most other districts have determined, Mr. Harris is essentially limited to providing forms, providing limited information such as court location and filing fees, typing documents from information provided by debtors, compiling them in proper order and providing duplication services.

Once the permissible scope of services is identified, other courts have approached "reasonableness" and "excessiveness" in the context of petition preparation fees under § 110(h) from different angles. At least one court has found that "typing services" are of dubious value altogether, noting that bankruptcy forms, other than the creditor matrix, do not have to be typed at all and are readily available to debtors without charge. *In re Evans*, 153 B.R. 960, 970 (Bankr.E.D.Pa.1993). Some courts have even found petition preparers' services to be of no value, and in some instances of negative value, due to the problems they created for the debtor. *In re Paskel*, 201 B.R. 511, 518 (Bankr. E.D.Ark.1996). (In this case, Ms. Haney in fact experienced some of those problems due to the untimeliness of the filing.) Some districts have established guidelines setting maximum fees for petition preparers by local court rule. *Hastings v. U.S. Trustee (In re Agyekum)*, 225 B.R. 695, 699 (9th Cir. BAP 1999). Individually, courts have consistently found between $50.00 and $150.00 to be a reasonable fee for bankruptcy petition preparation. *E.g., In re Cochran*, 164 B.R. 366 (Bankr. M.D.Fla.1994) (reasonable fee $50.00, compared to $250.00 to $420.00 charged); *Evans*, 153 B.R. at 970 (maximum fee of $100.00, when $250.00 charged); *Doser*, 281 B.R. at 319 (100.00 reasonable value where $214.00 charged); *Guttierez*, 248

B.R. at 298–99 (maximum of $50.00 permitted where $1700.00 charged); *In re Mullikin,* 231 B.R. 750 (Bankr.W.D.Mo.1999)($150.00 allowed where $404.00 charged); *see also In re Moran,* 256 B.R. 842, 849 (Bankr.D.N.H.2000) (maximum of $150.00 allowed without fee application, where $295.00 charged).

Many courts have routinely assigned an hourly rate and/or capped the number of hours reasonably spent preparing the petition. *See Hartman,* 208 B.R. at 780 (comparing preparers to secretaries and allowing $20.00 per hour); *see also In re Kassa,* 198 B.R. 790, 791–92 (Bankr.D.Ariz.1996) (allowing $16.82 per hour, with allowed fee of $201.92, compared to $500.00 charged). A recent decision from another bankruptcy court in the Sixth Circuit permanently enjoined a paralegal from charging more than $20.00 per hour, with a maximum total fee of $100.00, for preparing bankruptcy petitions. *In re Moffett,* 263 B.R. 805, 816 (Bankr.W.D.Ky.2001); *but see In re Landry,* 268 B.R. 301, 308 (Bankr.M.D.Fla.2001)(hourly rate of $75.00 adopted, consistent with billing rate for paralegals, but only up to a maximum of one and one-half hours time).

The UST cites most of the cases mentioned above and argues that Mr. Harris' fee far exceeds any amounts permitted as fees for petition preparers by any other court in the country. Accordingly, the UST requests that Mr. Harris' fee be reduced to reflect the reasonable value of services for bankruptcy petition preparers more in line with what is allowed by other bankruptcy courts throughout the country.

In response, Mr. Harris states that "the matter of his fees has been set." [Response to Motion to Cancel Fee Agreement and to Require Petition Preparer Donald Harris to Refund Fees to Debtor, Doc. # 16, at 1 ("Harris Response") ]. Mr. Harris believes that this court has previously ruled on the matter of his fees, and that the amount he can charge is "an amount under $550.00," *Id.,* a statement which hardly supports his position here. In support of his position, Mr. Harris cites *In re Leonard,* Case # 01–30273; *In re Howey,* Case # 01–30275; *In re Gilliam,* Case # 01–30274; *In re Miller,* Case # 01–30276; *In re Morelli,* Case # 01–30534; *In re Seitz,* Case # 01–30799; *In re Sorell,* Case # 01–30782; *In re Skelton,* Case # 01–30958; *In re Ludu,* Case # 01–30959; *In re Faylor,* Case # 01–30185. These case were all assigned to another bankruptcy judge in this division of the Northern District of Ohio Bankruptcy Court. To the extent that Mr. Harris is claiming that these cases are *res judicata* or collateral estoppel as to his fee in Ms. Haney's case, there has not been any record provided from which this court could make such a determination. Neither the orders themselves nor the records of those cases are before this court. It has not been shown that these cases involved the issue of whether Mr. Harris' fees were excessive. Even if the orders Mr. Harris relies upon and the records in those cases were properly before the court as evidence, this judge cannot envision any legal theory by which any determinations made in those cases would be binding on this judge in Ms. Haney's case. While this judge often relies on the decisions of other bankruptcy judges in this and other districts as persuasive precedent, they are not binding upon this court. This court must reach its own conclusions on the basis of the evidence in this particular case and the applicable law as it interprets it.

Alternatively, Mr. Harris contends his fees are not excessive and "are worth the value to the debtor" because he can have the "filing done in a rapid manner," he maintains extended evening hours convenient to his clients' work schedules, and he

can provide information to his clients in their homes. *Id.,* at 2. There are several problems with his argument. One is that the petition filing in this case was *not* done in a rapid or even timely manner. The court has not in fact been provided with any evidence of the services provided by Mr. Harris in this case; however, the court will take judicial notice of the filing of the petition and related documents Mr. Harris prepared for Ms. Haney and the docket in her case. Fed.R.Evid. 201(a), (b) and (c); *Bestway Products, Inc.,* 151 B.R. at 540–41. Beyond that, Mr. Harris has not proffered any evidence of factors such as the time spent, his claimed overhead expenses, or hourly rate charged in the preparation of Ms. Haney's petition and related documents. *Cf.* 11 U.S.C. §§ 329(b) and 330(a)(3).

Mr. Harris broadly asserted, not under oath, that it generally takes him 10 to 12 hours to prepare a petition. The court has serious doubts about the credibility of that statement unless Mr. Harris is performing services beyond what he is permitted to provide without ranging into the unauthorized practice of law in the State of Ohio. The left hand margin of Ms. Haney's petition and schedules show that they are the result of a standardized computer software program offered by E–Z Filing Inc., which requires information to be typed in on a computer that then formats the schedules and statement of affairs from the information provided. Mr. Harris is not permitted to evaluate and determine exemptions, as Ms. Haney testified that he actually did here, but only to type information already provided to him by her and compile the documents. While the court eschews the

word "simple" in reference to any bankruptcy filing, in favor of the concept of "routine," Ms. Haney's case is shown by the schedules and statement of affairs to be the essence of routine. She has no real property, limited personal property and debts that are not unusual in kind or number.

The court finds the fee charged by Mr. Harris to Ms. Haney, whether it was the $550.00 agreed to or the $358.00 he is actually collecting, exceeds the reasonable value of those services he permissibly rendered. In trying to support the reasonableness of his fee in Ms. Haney's case, Mr. Harris has argued that a court reporter would charge $3.65 a page to transcribe documents. [Harris Response at 2]. But the petition and schedules in this case were only 27 pages long, which would total $98.55 for their preparation on that theory.

Considering the precedents cited above, the prepared documents themselves and the docket in this case, the court finds that $200.00 reflects the maximum value of the permitted services provided by Mr. Harris to Ms. Haney. He effected the typing, copying, compilation and physical filing of her petition, schedules and statement of affairs. Notwithstanding the problems encountered in the timing of Ms. Haney's filing, she received value from Mr. Harris' services in that the schedules were complete and apparently accurate, and in that she ultimately received her discharge. This amount is admittedly a flat fee, which the court finds from its experience is the manner in which most chapter 7 debtors' lawyers also charge their clients.[4] Fed.

4. As illustrated above, there is extensive and thoughtful reported case law on this subject in which other courts have grappled with the value of petition preparer services, in particular cases and in general. While many of them work diligently to develop a lodestar analysis of permissible hourly rates times a routine number of hours, the bottom line of virtually all of the reported case law essentially ends up as a round number such as $50.00, $100.00 or $150.00, representing a maximum fee, stated or unstated as such, for petition

R.Evid. 201(a),(b) and (c). Based on this court's knowledge of the compensation reported by chapter 7 debtors' lawyers in this court, through compensation disclosure statements in thousands of cases, attorneys' fees for routine chapter 7 cases range from $450.00, on the low end, to as high as $925.00, on the high end. *Id.* At least a component of an attorney's fees represents petition and schedule typing and compilation, services which Mr. Harris can provide under Ohio law, in addition to counseling, legal strategy and analysis, contact with creditors and appearance at the first meeting of creditors, significant services which Mr. Harris cannot provide under Ohio law.

■ Mr. Harris has not supplied the court with any evidence to support any amount greater than $200.00. Likewise, there really is no evidence in this record from which the court could develop what is a reasonable hourly rate for Mr. Harris' services; however, the court can infer the routine number of hours typing and compiling the petition and schedules in a case like Ms. Haney's would take from the resulting documents as filed with the court. The court finds that five hours is generally a reasonable period of time for provision of permitted services. Therefore, the $200.00 flat fee would generally equate to an hourly rate of $40.00 per hour if one were to evaluate the sum in that fashion. At a fee of $350.00, Mr. Harris' hourly rate would be $70.00 an hour. At a fee of $550.00 Mr. Harris fee would equate to $110.00 an hour. Viewing the fees in that light, the court is more firmly convinced that Mr. Harris' fee in this case exceeds the value of the services permissibly rendered to Ms. Haney. Furthermore, it must be emphasized again that Mr. Harris has not

supplied any evidence to support either such hourly rates or such greater flat amounts.

The court has located only one other reported case in which a court allowed a fee greater than $200.00 for permissible services by a petition preparer in a chapter 7 case. *In re Schneider,* 271 B.R. 761, 765 (Bankr.D.Vt.2002). In *Schneider,* the court allowed a $300.00 fee, calculated as $30.00 per hour for 10 hours of service, where the petition preparer "painstakingly detailed" the services provided. Mr. Harris has not done that in this case. And even though it allowed a $300.00 fee, the court in *Schneider* admonished that "a typical fee [for a petition preparer] will be significantly less than $300.00, absent special or extraordinary circumstances." *Id.* Most other reported decisions allow considerably less than $200.00, with allowed fees generally ranging from $50.00 to $150.00, and some as low as $25.00. There is no evidence to prove why a fee of substantially more than this established range should be allowed at this time for services rendered in Sandusky, Ohio, specifically, and in the Northern District of Ohio, generally, as compared to other parts of the country.

*Conclusion:*

Based on the foregoing reasons and authorities, the court finds that the Motion is well taken and will be granted to the extent that Mr. Harris must turnover any fees, collected from Ms. Haney, in excess of $200.00. The excess fees must be turned over to the Chapter 7 panel trustee Elizabeth A. Vaughan, with Ms. Haney then being given time to claim an exemption in the amount turned over. Mr. Harris shall cease and desist from any further

preparer services in a routine consumer chapter 7 case. In other words, as a practical

matter, a flat fee.

collection efforts against Ms. Haney, whether on his own behalf or through an agent. The Motion is not well taken and will be denied to the extent that it seeks complete disgorgement of fees, and repayment of the filing fee. Mr. Harris' request in his Response to "enjoin the Trustee from continuing to attempt to prevent the debtors from using the services of a petition preparer" will also be denied. Furthermore, Mr. Harris shall be required to pay to the clerk of this court a mandatory fine for violation of 11 U.S.C. § 110(g)(1) in the amount of $20.00. A separate judgment and order in accordance with this Memorandum of Decision will be entered by the clerk.