In re Jared & Bridget
SHOUP, Debtors.

Liz Alba; We the People of Rancho
Cucamonga, Appellants,

v.

Maureen A. Tighe, United States
Trustee for Region 16,
Appellee.

No. 03–0411–GAF.

United States District Court,
C.D. California.

Jan. 21, 2004.

---

**3.** The parties also spend much time debating the policy considerations that support their respective positions. Since the language of the statute is clear and unambiguous, and the case law clearly supports the imposition of a fine in this case, the Court will not address the policy arguments in this memorandum.

Richard H. Lubetzky, Richard Lubetzky Law Offices, Los Angeles, CA, for appellants.

Maureen A. Tighe, Los Angeles, CA, Timothy J. Farris, US Trustee Office, Riverside, CA, for appellee.

## MEMORANDUM AND ORDER

FEESS, District Judge.

### I.

### INTRODUCTION

Title 11, United States Code, Section 110(g)(1) states: "A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." In this case, bankruptcy petition preparer Liz Alba of We The People of Palm Desert, received from her clients, Jared and Bridget Shoup, a filing fee—in the form of a money order made payable to the bankruptcy court—in connection with the preparation and filing of the Shoup's bankruptcy petition. The money order was given to a messenger who filed the Shoup's petition and used the money order to pay the filing fee.

On motion by the United States Trustee asserting the illegality of We The People's acceptance of the money order for the filing fee, the bankruptcy judge found that: (1) the acceptance of the money order constituted a receipt from the petitioner of a payment "for the court fees in connection with the filing" of the Shoup's petition; (2) that We The People therefore violated Section 110(g)(1); and (3) that We The People should be fined $50 for the violation.

In this appeal, We The People challenges that ruling. We The People concedes that it took delivery of the money order, which it then passed on to the messenger, but argues that the receipt of a money order made payable to the court does not violate the statute. Rather, We The People contends that the statute was designed to prevent only the payment of funds to the preparer for the preparer's account for later use in the payment of the

petition filing fee. The Trustee disagrees and argues that the statutory text bars the preparer from exercising any control over funds to be used as a filing fee whether or not payment of the fee is actually made to the preparer.

## II.

### THE ISSUE

■ Accordingly, the sole issue before the Court is the following:

Whether a bankruptcy petition preparer's receipt of a payment from the debtor, or on the debtor's behalf, for the court fees in connection with the filing of a bankruptcy petition, which payment is in the form of a cashier's check or money order payable to the United States Bankruptcy Court, violates 11 U.S.C. § 110(g)(1).

As the facts are not in dispute, this presents a question of law that is reviewed *de novo*. *In re Fraga,* 210 B.R. 812, 816 (9th Cir. BAP 1997). The Court holds that the plain language of the statute bars the preparer from receiving or collecting the fee in any form, and AFFIRMS the judgment of the bankruptcy court.

## III.

### DISCUSSION

#### A. LEGAL STANDARD FOR STATUTORY INTERPRETATION

■ "The first and most important step in construing a statute is the statutory language itself." *Royal Foods Co., Inc. v. RJR Holdings, Inc.,* 252 F.3d 1102, 1106 (9th Cir.2001) (citing *Chevron USA v. Natural Res. Def. Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The U.S. Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."

*Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). In cases where "the words of a statute are unambiguous, ... 'judicial inquiry is complete.'" *Id.* at 254, 112 S.Ct. 1146; *see also Royal Foods,* 252 F.3d at 1106 ("If from the plain meaning of the statute congressional intent is clear, that is the end of the matter.").

■ It is only necessary to look beyond the text of the statute in those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quotations omitted). "In such cases, the intention of the drafters, rather than the strict language, controls." *Id.; see also In re Pacific–Atlantic Trading Co.,* 64 F.3d 1292, 1299 (9th Cir.1995) ("If the statutory language is unclear, we look to legislative history to glean Congress' intent.").

#### B. THE LANGUAGE OF SECTION 110(g)

■ Section 110(g)(1) provides that: "A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." As stated previously, it is undisputed that We The People accepted filing fees in the form of a money order made payable to the bankruptcy court. The sole question before this Court is whether such action violates section 110(g)(1).

#### 1. The "Plain Meaning" of Section 110(g)(1) Prohibits the Handling of Filing Fees in Any Form

Looking first, as the Court must, to the text of the statute, the relevant phrase is "collect or receive any payment," 11 U.S.C. § 110(g)(1), a phrase that is undefined in

the statute. In construing the statute, one court noted that Congress "selected common terms in the disjunctive, designed to sweep broadly." *In re Alexander,* 284 B.R. 626, 632 (Bankr.N.D.Ohio 2002) and *In re Haney,* 284 B.R. 841, 849 (Bankr. N.D.Ohio 2002). The court in *Alexander* and *Haney* noted that the ordinary dictionary definition of the word "receive" includes simply taking possession or delivery, or coming into possession. A district court in Illinois recently agreed with this interpretation and held that section 110(g) prohibits a petition preparer "from taking possession of a debtor's filing fee." *El–Amin v. Bodenstein,* 2003 WL 291897, *1 (N.D.Ill., January 9, 2003).

The bankruptcy court in this case also agreed that the statute prohibits the preparer from taking possession of the filing fee, concluding that "[p]lainly read, the language and punctuation Congress used in section 110(g)(1) cannot be read any other way." (Alba Record Exh. E at 7). Because the statutory text is clear on its face, the Court could fairly deem at this point that the "judicial inquiry is complete." *Germain,* 503 U.S. at 254, 112 S.Ct. 1146. But because We The People argues that a literal interpretation of the statute goes against Congressional intent and/or produces an absurd result, the Court may look beyond the text to determine if a literal interpretation is appropriate.

**2. Congressional Intent Supports Adopting a Literal Interpretation of Section 110(g)**

**a. The Purpose Behind Section 110 Was to Protect Consumers**

 As discussed in the bankruptcy court's opinion, Congress's purpose in enacting section 110 was "to protect consumers from abuses by non-lawyer petition preparers." *In re Fraga,* 210 B.R. 812, 818–19 (9th Cir. BAP 1997). After reviewing the legislative history behind section 110, a Ninth Circuit court found that Congress felt the reform statute was "critically needed ... to confront the large scale fraudulent conduct of those who prey on the poor and unsophisticated." *In re Adams,* 214 B.R. 212, 218 (9th Cir. BAP 1997) (quoting 140 Cong. Rec. § 14597 (Oct. 7, 1994)). The *Adams* court further stated that section 110 was designed to protect consumers "from those who may take unfair advantage of debtors unfamiliar with the bankruptcy system." *Id.* (quotations omitted).

The legislative history also states:

While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in [an] adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R.Rep. No. 103–835, at 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365.

**b. A Literal Interpretation of Section 110(g) Does Not Conflict With Other Provisions of Section 110**

We The People contends that specific provisions of a statute should not be read in isolation; rather, courts must consider the structure of the statute as a whole, including its object and policy (Alba Brief at 14). While this is true, such an analysis does not further We The People's proposed interpretation of section 110(g). As stated previously, Congress enacted section 110 "to confront the large scale fraudulent conduct of those who prey on the poor and unsophisticated." *Adams,* 214 B.R. at 218. Nothing in that stated objec-

tive suggests that Congress intended courts to interpret section 110 in the liberal manner suggested by We The People.

Next, We The People points to the fact that section 110 does not explicitly prohibit petition preparers from filing petitions with the court, but a literal interpretation of section 110(g) would mean "the preparer would be unable to assist Debtors in filing bankruptcy petitions with the court, since the filing of such petitions must be accompanied by a money order for the filing fee payable to the court." (Alba Brief at 14).

The court in *Haney* recognized that a literal interpretation of section 110(g) would "effectively prohibit" bankruptcy petition preparers from assisting in the petition filing process, even though section 110 does not otherwise prohibit the filing of documents. *In re Haney*, 284 B.R. 841, 847 (Bankr.N.D.Ohio 2002). The court explained this result by noting that "[t]raditionally, state law defines what constitutes the unauthorized practice of law by bankruptcy petition preparers" and that Congress was careful "not to preempt and to preserve determining what constitutes the unauthorized practice of law as the province of other statutes and rules." *Id.* at 848. In some states, such as Ohio and Texas, the act of even filing court documents is illegal if done by a non-attorney. *Id.* The *Haney* court concluded that while Congress left some decisions to the states, it "did determine it necessary, through § 110(g), to regulate a petition preparer's handling of filing fees as a matter of federal bankruptcy law, perhaps identifying a void in other law that needed to be filled to protect debtors, regardless whether state law permits petition preparers to physically file the petition or not." *Id.* at 849.

We The People contends that not only did Congress fail to prohibit the filing of bankruptcy documents by petition prepar-

ers, it "evidenced its intention to allow preparers to file papers with the bankruptcy court in § 110(i)(1), which authorizes the court to impose fines and assess damages against a petition preparer if a bankruptcy petition or related proceeding is dismissed because of the preparer's 'failure to file bankruptcy papers.'" (Alba Brief at 15 n. 4).

■ The Court rejects the conclusion that enactment of a *punitive* provision, especially in the context of legislation intended to curb the actions of petition preparers, evidences Congress's unstated intention to *allow* certain activities by those preparers. Section 110(g) is directed specifically to the handling of petition filing fees while Section 110(i) deals with broader issues pertaining to the filing of "papers." *See In re Doser*, 281 B.R. 292, 311 (Bankr.D.Idaho 2002), *aff'd* 292 B.R. 652, 661 (D.Idaho 2003). It is a well-accepted canon of statutory construction that where "a specific and a general statute address the same subject matter, the specific one takes precedence regardless of the sequence of the enactment, and must be applied first." *In re Padilla*, 222 F.3d 1184, 1192 (9th Cir.2000) (holding that "a debtor's misconduct should be analyzed under the most specific [Bankruptcy] Code provision that addresses that type of misconduct").

In the final analysis, section 110(i) neither explicitly nor implicitly supports the argument that Congress intended to allow petition preparers to file petitions. As the court in *Doser* reasoned, the difference in word choice between section 110(i) and 110(g), may reflect that Congress "simply preferred, in the exercise of its legislative prerogative, that [petition preparers] not handle filing fees in any form, even if that created a practical problem in the filing of the original bankruptcy petition." *Id.*

Because the general purpose of section 110 reveals Congress's intent to limit the activities of bankruptcy petition preparers, a strict interpretation of the provisions within that statute is in order. The discussion above convinces the Court that Congress said what it meant in section 110(g) and that it meant what it said there. *Germain*, 503 U.S. at 253–54, 112 S.Ct. 1146.

### c. A Literal Interpretation of Section 110(g) Does Not Lead to an Absurd or Illogical Result

We The People also contends that the Court may not adopt a construction of section 110(g) that is absurd or illogical. (Alba Brief at 14). Again, this is true, but only if the allegedly absurd or illogical result of an otherwise unambiguous statute is at odds with the legislative intent. *See Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026.

Here We The People claims that the bankruptcy court's ruling is absurd because the "practical effect" of a literal interpretation "would require the preparer to take the petition to the court and wait for the Debtor to arrive with the filing fee." (Alba Brief at 14). Whether or not this state of affairs qualifies as absurd, it contains unstated and unsupported assumptions—that Congress wanted petition preparers to assist debtors with the filing process or that the only way that a petition can be filed is if the preparer personally goes to the courthouse or personally arranges for a messenger service. Nothing in section 110 even suggests that Congress intended petition preparers to be involved with the petition filing process *at all.* One court discussing this issue noted that a petition preparer's "job is solely to type the petition" and that the preparer "should then give the petition back to the client for filing." *In re Moffett*, 263 B.R. 805, 812

(Bankr.W.D.Ky.2001). Once that is done, the responsibility for arranging the filing of the petition then rests with the debtor, hardly a result that can be described as absurd or illogical. As the court in *Doser* stated, "Congress could have justifiably concluded that the responsibility for filing the debtor's bankruptcy petition, with its attendant legal consequences, is a duty best entrusted only to trained, licensed, ethical professionals" and that prohibiting a preparer "from handling any filing fees, regardless of the form those fees may take, represents one possible congressional solution to ensuring that a [petition preparer] not perform this important duty." *Doser*, 281 B.R. at 312.

Even if the Court were to accept that it is absurd to require that debtors maintain control over the filing fee, such absurdity "arises within what Congress actually intended, and must normally be let stand." *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 872 (9th Cir.1981). Section 110 was passed as part of an effort to protect debtors from both unethical and inept petition preparers. Thus, even if a consequence of a literal application of section 110(g) is that petition preparers are prevented from physically filing petitions, "that result [is] harmonious with Congressional intent as reflected by the statute's context." *Id.*

Even though We The People thinks that the practical consequences of section 110(g) were either unexpected by Congress or are absurd, the U.S. Supreme Court has held that "the remedy lies with the law making authority, and not with the courts ... Congress may amend the statute; [the courts] may not." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).[1]

---

1. Proposals have been submitted to amend section 110, but a review of the proposed

amendments reveals that, as yet, Congress has not chosen to modify the language of

### 3. The Case Law Supports a Literal Interpretation of Section 110(g)

Every court to decide this issue has adopted a literal interpretation of section 110(g) (*see, e.g., In re Burdick,* 191 B.R. 529 (Bankr.N.D.N.Y.1996); *In re Green,* 197 B.R. 878 (Bankr.D.Ariz.1996)) with the notable exception of Judge Jelien, the chief bankruptcy judge for the Northern District of California. *See In re Reed,* 208 B.R. 695 (1997). Unsurprisingly. We The People relies almost exclusively on *Reed* to support its position, even though the reasoning and result in *Reed* has been expressly rejected in multiple subsequent opinions. The Reed decision is noteworthy for its failure to discuss the statutory text and source material relevant to Congressional intent. Rather, the *Reed* court adopted its own construction because it "believes" a literal interpretation "is not a reasonable one." *Reed,* 208 B.R. at 697. This approach violates those canons of construction described above and improperly usurps the role of the legislature in our democratic form of government. The Court therefore finds *Reed* to have no value as precedent.

The other courts that have addressed the issue now before this Court have concluded that the language of the statute is unambiguous and should be given a literal interpretation. For example, the *Green* court not only looked to the language of the statute, but also to *Collier on Bankruptcy* for guidance in discerning Congressional intent. *See* 2 COLLIER ON BANKRUPTCY ¶ 110.07 (15th ed. rev'd 2003). The court in *Green,* and many courts thereafter, have agreed with *Collier* that Congress enacted section 110(g) for three primary reasons:

(1) preventing the unauthorized filing of petitions; (2) preventing or curtailing the preparer's influence on a debtor's decision and timing on petition filing;

and (3) preventing a preparer's misrepresentation, or misquoting of the filing fee.

*Green,* 197 B.R. at 879; *see also Doser,* 281 B.R. 292, 311 (Bankr.D.Idaho 2002); *In re Avery,* 280 B.R. 523, 531 (Bankr.D.Colo. 2002); *In re Jones,* 227 B.R. 704, 705 (Bankr.S.D.Ind.1998); *In re Wallace,* 227 B.R. 826, 827 (Bankr.S.D.Ind.1998); *In re Moore,* 1995 WL 819021, *2 (Bankr. N.D.N.Y.1995).

Given the above, it is unsurprising that recent published opinions, by both district courts and bankruptcy courts, have explicitly elected to not follow *Reed. See In re Doser,* 292 B.R. 652, 661 (D.Idaho 2003) (acknowledging *Reed,* but adopting the majority view); *El–Amin v. Bodenstein,* 2003 WL 291897, *1 (N.D.Ill.2003) (declining to follow *Reed* and adopting "[t]he more well reasoned majority view"); *In re Haney,* 284 B.R. 841, 849 (Bankr.N.D.Ohio 2002) (finding "that the majority view better represents the plain meaning of § 110(g) and Congress' intentions as expressed therein"); *In re Alexander,* 284 B.R. 626, 633 (Bankr.N.D.Ohio 2002) (same); *In re Doser,* 281 B.R. 292, 312 (Bankr.D.Idaho 2002) (acknowledging *Reed,* but disagreeing with *Reed's* analysis and adopting the majority view). Other post-*Reed* cases have reached a contrary result, but without any reference to the *Reed* opinion. *See In re Bonarrigo,* 282 B.R. 101, 106–07 (D.Mass.2002) (citing *Green* and holding that the petition preparer's "admitted procedure of instructing clients to give him the signed petition and a money order made out to the bankruptcy court so that he can file the fee and the petition violates Section 110(g)"); *In re Avery,* 280 B.R. 523, 531 (Bankr.D.Colo. 2002) (citing *Green* and holding that "Section 110(g) prohibits a petition preparer from taking possession of a debtor's filing fee in any form—including acceptance of a

section 110(g)(1). *See* H.R. 975, 108th Cong., 1st Sess. (March 21, 2003).

debtor's check or money order made payable to the bankruptcy court for later delivery to the court"); *In re Moffett*, 263 B.R. 805, 812 (Bankr.W.D.Ky.2001) (holding that accepting a money order for filing fees "is a direct violation of 11 U.S.C. § 110(g)(1)"); *In re Wallace*, 227 B.R. 826, 828 (Bankr.S.D.Ind.1998) (citing *Green* and holding section 110(g)(1) prevents petition preparers from receiving "any monies, in any form, that are intended to be paid to the Clerk of the Bankruptcy Court"); *In re Jones*, 227 B.R. 704, 705 (Bankr. S.D.Ind.1998) (same); *In re Hartman*, 208 B.R. 768, 778 (Bankr.D.Mass.1997) (citing *Green* and finding that collecting the filing fee from the debtor violates section 110(g)).[2]

## IV.

## CONCLUSION

The plain meaning of section 110(g) is that a bankruptcy petition preparer is prohibited from taking possession of a petition filing fee.[3] The statute does not include any exceptions for payments in the form of a money order and it does not include exceptions for situations where the petition preparer timely files the petition in question, in accordance with the debtor's instructions. Nothing in the statute supports the argument that a petition preparer is precluded only from taking payment for its own account to be used in the payment of the petition filing fee. We The

---

People has not presented a single persuasive reason why the Court should not presume that Congress said what it meant in section 110(g) and that Congress meant what it said; therefore, "judicial inquiry is complete." *Germain*, 503 U.S. at 253–54, 112 S.Ct. 1146.

The bankruptcy court's decision and the imposition of the $50 fine is **AFFIRMED**.

IT IS SO ORDERED.

---

2. We The People asserts that the court in *In re Kangarloo*, 250 B.R. 115 (Bankr.C.D.Cal. 2000) followed *Reed*, thus establishing a "California view" of section 110(g) that should be followed in this case. A review of *Kangarloo* reveals that the court acknowledged the split in authority between *Reed's* "liberal" interpretation of section 110(g) and the strict interpretation adopted by other courts. *Kangarloo*, 250 B.R. at 121–22. The court in *Kangarloo* was not required to decide which view was appropriate because, in that case, the debtor had made the check payable to the petition preparer, not to the bankruptcy

court, thus under either line of authority, the petition preparer in *Kangarloo* violated section 110(g). *Id.* at 122. Thus, *Kangarloo* neither contradicts not supports We The People's position.

3. The parties also spend much time debating the policy considerations that support their respective positions. Since the language of the statute is clear and unambiguous, and the case law clearly supports the imposition of a fine in this case, the Court will not address the policy arguments in this memorandum.