Lawrence MILMAN, Evelyn Bernstein, Deepak Chowdhary, Louis Giordano, Andrew Iarossi, Kevin Koziatek, Bernard Kwait, Tom Mitros, Morris Silver, Deborah Spirgel and Donald Stessin, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BOX HILL SYSTEMS CORP., Salomon Smith Barney Inc., Nationsbanc Montgomery Securities Inc., Philip Black, Benjamin Monderer, Carol Turchin and Mark A. Mays, Defendants.

No. 98 CV 8640.

United States District Court, S.D. New York.

Feb. 8, 2000.

Russell J. Gunyan, Milberg, Weiss, Bershad, Hynes & Lerach LLP, Lee S. Shalov, Shalov, Stone & Bonner, New York City, for Plaintiffs.

Francis S. Chlapowski, Brobeck, Phleger & Harrison LLP, New York City, for Corporate and Individual Defendants.

Brad Karp, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Underwriter Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

This is a securities fraud action in which plaintiffs now move for class certification pursuant to Federal Rule of Civil Procedure 23. Defendants do not oppose certification of a class. Rather, defendants contend that the class proposed by plaintiffs is impermissibly broad. Accordingly, the sole issue to be resolved on this motion is the proper membership of the plaintiff class. For the reasons that follow, the class proposed by plaintiffs is certified without limitation.

### I.  Background [1]

On September 16, 1997, defendant Box Hill Systems Corp. ("Box Hill") and the individu-

---

1.  The substantive allegations and facts of this case have been detailed in a prior opinion and

al defendants sold 6,325,000 shares of Box Hill common stock in an initial public offering (the "Box Hill Offering" or the "Offering").[2] Defendants Salomon Smith Barney Inc. and Nationsbanc Montgomery Securities Inc. acted as co-lead underwriters for the Offering.

The named plaintiffs, all of whom purchased Box Hill stock in the Offering or traceable thereto, commenced litigation on March 19, 1999. Plaintiffs allege that defendants violated sections 11 and 12 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l, by making material misrepresentations in the registration statement and prospectus for the Box Hill Offering.[3] Plaintiffs seek damages and recission of their stock purchases.

## II. Motion for Class Certification

Plaintiffs Lawrence Milman, Evelyn Bernstein, Deepak Chowdhary, Bernard Kwait, Morris Silver, Jonathan Spirgel and Donald Stessin seek to represent a class of persons who suffered damages as a result of defendants' alleged violations of § 11 of the 1933 Act (the "§ 11 Class").[4] *See* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl.Mem.") at 1 & n. 1. The proposed § 11 Class consists of all persons who purchased Box Hill common stock

in the Offering or traceable thereto during the period between September 16, 1997 and April 14, 1998. *See id.* In addition, plaintiffs Chowdhary, Kwait, Silver, Spirgel and Stessin seek to represent a subclass of persons who suffered damages as a result of defendants' alleged violations of § 12 of the 1933 Act (the " § 12 Subclass").[5] *See id.* The proposed § 12 Subclass consists of all persons who purchased Box Hill common stock in the Offering.[6] *See id.*

Defendants do not object to class certification or to the proposed § 12 Subclass. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Opp.") at 1. They do, however, contest the scope of the proposed § 11 Class. *See id.* at 1–2. It is defendants' position that secondary market purchasers lack standing to assert claims under § 11. *See id.* at 1. Accordingly, defendants argue that "[t]he § 11[C]lass should be limited to those investors who purchased Box Hill stock in the initial public offering on September 16, 1997."[7] *Id.*

## III. Discussion

As set forth above, the sole issue to be resolved on this motion is the proper scope of

will only be repeated summarily here. *See Milman v. Box Hill Sys. Corp.*, 72 F.Supp.2d 220 (S.D.N.Y.1999)(granting in part and denying in part defendants' motion to dismiss the complaint).

**2.** The individual defendants, Philip Black, Benjamin Monderer, Carol Turchin and Mark A. Mays, were at all relevant times officers of Box Hill.

**3.** Section 11 of the 1933 Act provides for strict liability and money damages when companies offering their shares to the public fail to provide required information, or include misrepresentations, in their registration statements. *See* 15 U.S.C. § 77k; *infra* Part III. Section 12 provides for strict liability and recission where an issuer offers or sells a security by means of "a prospectus or oral communication, which includes an untrue statement of material fact." 15 U.S.C. § 77l.

Plaintiffs also bring a derivative claim for controlling person liability against the individual defendants pursuant to § 15 of the 1993 Act. *See* 17 U.S.C. § 77o.

**4.** Four of the eleven original named plaintiffs, Louis Giardano, Kevin Koziatek, Tom Mitros and Andrew Iarossi, have withdrawn as lead plain-

tiffs and proposed class representatives. *See* Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification ("Pl.Reply") at 1 n. 1. In addition, Jonathan Spirgel has been substituted for his wife, Deborah Spirgel. *See id.*

**5.** Because § 15 of the 1933 Act imposes liability only where there is an underlying § 11 or § 12 claim, proper members of both the § 11 Class and § 12 Subclass may also assert claims under § 15.

**6.** Because plaintiffs Milman and Bernstein purchased their shares of Box Hill stock in the secondary market, *see* Pl. Reply at 4, they cannot, by definition, represent plaintiffs' proposed § 12 Subclass.

**7.** Similarly, defendants contend that secondary market purchasers Milman and Bernstein should not be certified as class representatives. *See* Def. Opp. at 3. Note that defendants are effectively arguing that (i) the proposed § 12 Subclass should be the only certified plaintiff class; and (ii) that the proposed representatives for the § 12 Subclass should be the only certified class representatives.

the plaintiff class. That determination turns on the question of who has standing to sue under § 11 of the 1933 Act.[8]

Section 11 provides in relevant part as follows:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue ... every person who signed the registration statement. ... [and] every underwriter with respect to such security.

15 U.S.C. § 77k(a).

Courts in the Second Circuit have long held that a secondary market purchaser who can trace her securities to a registered offering may bring suit under § 11. *See Barnes v. Osofsky*, 373 F.2d 269 (2d Cir.1967). However, defendants contend that the Supreme Court's holding in *Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), effectively overturns Second Circuit precedent and limits § 11 standing to purchasers in an initial offering. Defendants also argue that the plain language of § 11 together with the statute's legislative history support preclusion of secondary market purchasers.

Although one court in the Second Circuit has limited § 11 standing to initial purchasers in the wake of *Gustafson*,[9] I am persuaded that the holding of *Adair v. Bristol Tech. Sys., Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998)(Sweet, J.), and the reasoning supporting that holding, should be followed.[10] In *Adair*, Judge Sweet thoughtfully considered all three arguments raised by defendants in

this case—the impact of *Gustafson;* the plain language of § 11; the legislative history of § 11—and concluded that secondary market purchasers have standing to assert § 11 claims. Indeed, Judge Sweet wrote that "to limit [§ 11] liability only to buyers in the [initial public offering] and not to buyers who can trace their shares to the registration statement allows the issuers to escape a margin of liability for which § 11 was drafted to cover." 179 F.R.D. at 133.

Although this Court is not bound to follow *Adair*, I adopt its legal reasoning and conclusions as my own and address defendants' arguments only briefly below.

### A. *Gustafson v. Alloyd*

Defendants first contend that the Supreme Court's holding in *Gustafson* compels the finding that § 11 standing is limited to initial purchasers. *See* Def. Opp. at 3–9. Defendants are wrong.

In *Gustafson*, the sole shareholders of a privately-held corporation sold their shares to the plaintiff pursuant to a sales contract. *See* 513 U.S. at 564, 115 S.Ct. 1061. The plaintiff later sought to rescind the stock purchase under § 12 of the 1933 Act, arguing that the sales contract constituted a "prospectus". *See id.* at 565–66, 115 S.Ct. 1061. The Supreme Court granted certiorari to consider the narrow issue of whether a private agreement to sell securities constitutes a "prospectus" for purposes of § 12 liability, and it concluded that "[t]he contract of sale, and its recitations, were not held out to the public and [thus] were not a prospectus as the term is used in the 1933 Act." *Id.* at 584, 115 S.Ct. 1061.

Put simply, *Gustafson* is inapposite. The *Gustafson* Court never addressed the issue of secondary purchaser standing under § 11.

---

**8.** Because plaintiffs' proposed § 12 Subclass is limited to initial purchasers, plaintiffs apparently concede that secondary market purchasers do not have standing to assert claims under § 12 of the 1933 Act. Accordingly, I do not address the issue of secondary purchaser standing under § 12.

**9.** *See In re WRT Energy Secs. Litig.*, 96 Civ. 3610, 1997 WL 576023 (S.D.N.Y. Sept.15, 1997)(Keenan, J.).

**10.** In addition to *Adair*, two other courts in the Second Circuit have held that *Gustafson* does not foreclose secondary market purchasers from maintaining § 11 claims. *See Salomon Smith Barney v. Asset Securitization Corp.*, 98 Civ. 4186, 1999 WL 1095605 (S.D.N.Y. Dec.3, 1999)(Jones, J.); *In re Fine Host Corp. Secs. Litig.*, 25 F.Supp.2d 61 (D.Conn.1998)(Hall, J.).

*See Salomon Smith Barney,* 1999 WL 1095605, \* 3; *Adair,* 179 F.R.D. at 131–32. Indeed, *Gustafson* "neither involved a § 11 claim nor a public offering." *Adair,* 179 F.R.D. at 131. Accordingly, *Gustafson* does not limit § 11 standing to initial purchasers.

## B. Plain Language of § 11

Despite defendants' arguments to the contrary,[11] the plain language of § 11 clearly demonstrates that standing to sue under the statute is not limited to initial purchasers. *First,* the enabling language of § 11 is broad in scope. By its terms, the statute applies to *"any person* acquiring such security." 15 U.S.C. § 77k(a) (emphasis added). *Second,* the statute further provides that

> [i]f such person acquired the security *after* the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement, then the right of recovery under this subsection shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission . . . .

*Id.* (emphasis added). By requiring "after" or secondary market purchasers to prove the element of reliance, § 11 explicitly recognizes the ability of secondary market purchasers to assert claims under the statute. *See also Adair,* 179 F.R.D. at 132 (citing above-quoted provision of § 11 as proof that Congress "explicitly contemplated that a plaintiff could purchase a registered security well after the IPO and still have a remedy under § 11").

*Third,* the statute's damages provision, § 11(e), states that damages are to be calculated based on the "difference between the amount paid for the security (*not exceeding the price at which the security was offered to the public* ) and . . . the value thereof as of the time . . . suit was brought." 15 U.S.C. § 77k(e)(emphasis added). By capping damages at an amount "not exceeding the price at which the security was offered to the public", § 11(e) plainly acknowledges that persons who purchased securities at a price other than the offering price may recover under the statute. Put somewhat differently, if § 11 standing was limited to initial purchasers, then "the amount paid" for the relevant security would never "exceed[ ] the price at which the security was offered to the public", and there would be no need for a damages cap. Instead, the statute could simply state that damages are to be calculated "based on the difference between the offering price for the security and . . . the value thereof as of the time suit was brought." *See also Adair,* 179 F.R.D. at 133 ("If Congress intended to limit liability to purchasers in the IPO, the language [of § 11(e) ] could simply read 'at the offering price' ").

## C. Legislative History

Finally, defendants cite portions of the legislative history of § 11 in support of their contention that § 11 standing is limited to initial purchasers. *See* Def. Opp. at 15–20.

■ To begin, it is a well-settled principle of statutory construction that "[l]egislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." *Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir.1999). Because the plain language of § 11 unambiguously conveys standing upon secondary market purchasers who can trace their shares to registered offerings, it is unnecessary and improper to use the statute's legislative history as an interpretive tool. *See id.* ("[J]udicial review must end at the statute's unambiguous terms.").

Moreover, the legislative history of § 11 is at best "ambiguous about whether purchasers in the aftermarket who can trace their securities back to the registration statement have standing." *Adair,* 179 F.R.D. at 132.

---

**11.** Defendants revisit the proper interpretation of the plain language of § 11 by arguing that controlling Second Circuit precedent, namely *Barnes v. Osofsky,* is "inapposite and incorrect". *See* Def. Opp. at 20–25. Defendants are wrong. *Barnes* squarely and correctly held that, under the plain language of the statute, secondary market purchasers with traceable shares have standing to assert § 11 claims. *See Barnes,* 373 F.2d at 271–73. However, assuming arguendo that *Barnes* was not controlling precedent, for the reasons set forth above, the plain language of § 11 does not limit standing to initial purchasers.

As Judge Sweet explains in *Adair*, support for both positions—that is, secondary market purchaser standing and no secondary market purchaser standing—can be found in the same House of Representatives Report. *See id.*

\* \* \* \* \* \*

■ In light of Second Circuit precedent and the plain language of § 11, I conclude that secondary market purchasers who can trace their shares to a registered offering have standing to assert claims under § 11. Accordingly, plaintiffs' proposed § 11 Class need not be limited to those persons who purchased Box Hill Stock in the Offering. Similarly, plaintiffs Milman and Bernstein are proper § 11 Class representatives.

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion for class certification is granted without limitation. The § 11 Class shall consist of all persons who purchased Box Hill common stock in the Offering or traceable thereto during the period between September 16, 1997 and April 14, 1998. The § 12 Subclass shall consist of all persons who purchased Box Hill common stock in the Offering.

Excluded from the § 11 Class and § 12 Subclass are defendants; members of defendants' immediate families; all officers and directors of any of the defendants or their subsidiaries; any person, firm, trust, corporation officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any defendant; and the legal representatives, agents, affiliates, heirs, successors and assigns of any such excluded persons.

Plaintiffs Milman, Bernstein, Chowdhary, Kwait, Silver, Spirgel and Stessin are certified as representatives of the § 11 Class. Plaintiffs Chowdhary, Kwait, Silver, Spirgel and Stessin are further certified as representatives of the § 12 Subclass. A conference is scheduled for February 16, 2000 at 4:30 p.m.