**In re LANDRY, Pamela Kaye, Debtor.**

**No. 99–09643–6J7.**

United States Bankruptcy Court,
M.D. Florida.
Orlando Division.

May 19, 2000.

Pamela Kaye, Landry, Merritt Island, FL, for Debtor.

Kenneth D. Herron, Jr., Orlando, FL, Chapter 7 Trustee.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON TRUSTEE'S MOTION FOR DAMAGES AGAINST BANKRUPTCY PETI-TION PREPARER*

KAREN S. JENNEMANN, Bankruptcy Judge.

This matter came on for hearing on February 1, 2000. The Chapter 7 trustee, Kenneth D. Herron, Jr. (the "Trustee"), filed a Motion for Damages Against Bankruptcy Petition Preparer (the "Motion") seeking damages against Stacey Burnworth (the "Respondent") for violation of Section 110(h) of the Bankruptcy Code.[1] (Doc. No. 8). The Trustee asserts the Respondent charged excessive fees for her services and failed to disclose the full amount of fees she received from the Debtor. The Respondent denies these allegations. (Doc. No. 10). After reviewing the pleadings, testimony and applicable law, the Trustee's Motion is granted.

The Respondent is the owner and employee of Paralegal Paperworks, Inc. ("Paperworks"). For a fee, Paperworks prepares various legal documents including bankruptcy petitions and accompanying schedules for prospective debtors. Paper-

---

1. Unless stated otherwise, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

works employs no attorneys and qualifies as a bankruptcy petition preparer pursuant to Section 110(a)(1) of the Bankruptcy Code. Paperworks has acted as a petition preparer service for many years and previously was ordered to return an excessive fee for similar services in the Chapter 7 case of *Howard B. Cannon, Jr.,* Case No. 93–455–6C7. (Doc. No. 29).

■ *Debtor Paid $275 for her Bankruptcy Pleadings.* In this case, the Debtor, Pamela Kaye Landry, hired the Respondent to prepare her bankruptcy petition and related schedules on or about September 30, 1999. The Debtor paid $275 for these services. The documents supporting this payment characterize the two deposits made by the Debtor in different and inconsistent ways.

The earliest receipt reflects a payment of $100 for "bankruptcy" made on September 30, 1999. (Trustee's Exhibit No. 1). The receipt also provides that $175.00 was still due to Paperworks and that, in addition, the Debtor owed the $175 filing fee. Looking at this receipt, the Debtor apparently paid a portion, $100, of the total fee of $275 necessary for Paperworks to finalize her bankruptcy papers.

The second receipt, dated October 18, 1999, reflects an additional payment of $175 by the Debtor. (Trustee's Exhibit No. 1). This payment is characterized as a payment in full for membership in a legal document preparation club (the "Club"). The Respondent testified that membership in the Club allowed participants to receive a 15% discount on future legal documents prepared by Paperworks. Paperworks could revoke the membership benefits at any time without notice to members or cause. (Respondent's Exhibit 3.) As such, prospective members really received no benefit from the Club because their membership was revocable at will by Paperworks.

In contrast to the receipts, dated September 30 and October 18, the Debtor's application for membership in the Club provides a third characterization of the $275 payment made by the Debtor to Paperworks. (*Id.*) Two notations appear at the bottom of the application. The first notation is dated September 30, 1999, and reads "paid $100.00 cash $50.00 for bankruptcy $50.00 for deposit into Discount Document Prep Services." Yet, the Debtor did not sign the application until October 18, 1999, over two weeks *after* the date of the alleged first entry. The second notation, dated October 18, 1999, reads, "Pd. 175.00 balance due on membership."

The notations regarding payment on the application are inconsistent with the receipts given to the Debtor at the time she made her payments. Moreover, the notation, dated September 30, 1999, appears to have been added *after* the Debtor made her second payment. The Respondent failed to account for this incongruity during her testimony. Furthermore, the Respondent apparently delayed obtaining the Debtor's signature on the bankruptcy pleadings until the entire $275 fee was paid on October 18, 1999. (Doc. No. 1). The most credible interpretation of the inconsistent evidence indicates that the Debtor paid $275 to get the papers necessary to file her bankruptcy case on November 19, 1999. The Debtor's membership in the alleged Club was of no value.

As for the legitimacy of the Club, in the Respondent's own words, she created the Club, "[b]ecause I am restrained to a maximum of a hundred dollars for bankruptcies, I need to bring in money in other means in order to keep my doors open, so I have come up with this discount document preparation club membership." (Transcript p. 17). The Club is a charade designed to increase the fees paid to the petition preparer without directly characterizing the payment as a fee for preparing bankruptcy pleadings. The Respondent apparently designed the scheme to evade the limitations on reasonable compensation payable to her.

Moreover, the Respondent failed to disclose the amount of payments received

from the Debtor in the Disclosure of Compensation of Bankruptcy Petition Preparer she signed and filed in this case. (Trustee's Exhibit No. 2). Section 110(h)(1) of the Bankruptcy Code requires a petition preparer to disclose "any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case." The Respondent's Disclosure lists a single payment of $50 for the Respondent's services. In addition, the Respondent prepared a Statement of Assistance signed by the Debtor that also reflects a single $50 payment for the Respondent's services. (Trustee's Exhibit No. 3.) The Respondent completed only one task for the Debtor—the preparation of her bankruptcy pleadings. In return, she received two payments totaling $275. The Respondent fraudulently and deceptively failed to include the full amount of $275 she received in her Disclosure.

The Respondent argues that the receipt, indicating a total fee of $275 for the bankruptcy related services, given to the Debtor at the time the Debtor made her first payment was incorrect and prepared by another employee of Paperworks. (Transcript p. 12). The Respondent adamantly claims that $50 of the payment was for preparation of bankruptcy pleadings and $225 was for membership to her Club. The Court does not accept the Respondent's testimony as credible. The Respondent simply was attempting to avoid the compensation limitations placed on bankruptcy petition preparers by using the ruse of the Club.

*The Role of the Bankruptcy Petition Preparer.* In 1994, the Bankruptcy Code was amended, in part, to recognize the role of a bankruptcy petition preparer. Section 110 of the Bankrupty Code was enacted and is entitled, "Penalty for persons who negligently or fraudulently prepare bankruptcy petitions." In subsection (a)(1), a "bankruptcy petition preparer" is defined as, "a person, other than an attorney, or an employee of an attorney, who prepares for compensation a document for filing." Attorneys and persons working under attorneys were specifically excluded. Section 110 was intended to "create standards and penalties pertaining to bankruptcy petition preparers." (H.R. Rep. 103–834, 103rd Cong., 2nd Sess 40–41 (Oct. 4, 1994); 140 Cong. Rec. H10770 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994 p. 3336.) Furthermore, Congress stressed "[w]hile it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system." *Id.*

Petition preparers have a legitimate role in today's consumer bankruptcy practice. Often a debtor cannot afford an attorney. These debtors, who are unfamiliar with the legal system and unaccustomed to working with attorneys, turn to petition preparers to prepare the paperwork needed to file their bankruptcy case. Problems arise when unscrupulous preparers take advantage of distraught or unsophisticated clients who lack the knowledge of what rights, obligations, and duties arise when a bankruptcy petition is filed. One common abuse results from overcharging for the services a petition preparer legally can provide—the mere preparation of the bankruptcy pleadings. A petition preparer cannot dispense legal advice or guide the Debtor in selecting forms or the information to include on bankruptcy pleadings.

*The Unauthorized Practice of Law.* Section 110(k) provides in part that, "[n]othing in this section [110] shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." Traditionally, bankruptcy courts look to state law for guidance when resolving issues pertaining to the unauthorized practice of law. *In re Samu-*

*els,* 176 B.R. 616, 620 (Bankr.M.D.Fla. 1994); *In re Bachmann,* 113 B.R. 769 (Bankr.S.D.Fla.1990); *In re Minchew,* 150 B.R. 275 (Bankr.N.D.Fla.1992). Persons not licensed as attorneys are prohibited from practicing law in Florida. "Any person not licensed or otherwise authorized by the Supreme Court of Florida who shall practice law ... shall be guilty of a misdemeanor of the first degree." Fla. Stat. 454.23.

▆▆▆ Typing services and petition preparers have a very limited role in preparing bankruptcy pleadings:

> "Typing services" ... may type bankruptcy forms for their clients, provided they only copy the written information furnished by his clients. They may not advise clients as to the various remedies and procedures available in the Bankruptcy system.... typing services may not make inquiries nor answer questions as to the completion of particular bankruptcy forms or schedules nor advise how to best fill out bankruptcy forms or complete schedules. They may legally sell bankruptcy forms and any printed material purporting to explain bankruptcy practice and procedure to the public. Under no circumstances may they engage in personal legal assistance in conjunction with typing service business activities, including the correction of errors and omissions.

*Bachmann,* 113 at 774. Petition preparers may not provide any service such as those listed below because these services are included within the scope of what a lawyer would perform:

> (1) Determining when to file bankruptcy cases;
>
> (2) Deciding whether to file a Chapter 7 or a Chapter 13;
>
> (3) Filling out or assisting debtors in completing forms or schedules;
>
> (4) Soliciting financial information and preparing schedules;
>
> (5) Providing clients with definitions of legal terms of art;

> (6) Advising debtors which exemptions they should claim;
>
> (7) Preparing motions and answers to motions;
>
> (8) Advising debtors on dischargeability issues;
>
> (9) Advising debtors concerning the automatic stay;
>
> (10) Correcting "errors" or omissions on bankruptcy forms; and
>
> (11) Advising clients as to various remedies and procedures available in the bankruptcy system.

*Samuels,* 176 B.R. at 622. A layperson who does anything beyond merely typing the petition, accompanying schedules, and other forms based solely on the information supplied by a debtor engages in the unauthorized practice of law.

▆▆▆ *Reasonableness of Fees.* Because the role of a petition preparer is so limited, the reasonable compensation they can receive similarly is limited. Further, bankruptcy courts are charged with the responsibility to determine the reasonableness of a petition preparer's fees. *In re Cochran,* 164 B.R. 366, 368 (Bankr.M.D.Fla.1994). In *Cochran,* a group of petition preparers, including Paperworks, presented evidence on the reasonableness of fees charged by Central Florida petition preparers. After extensive evidence, this Court found that a "reasonable fee to be charged by a nonlawyer in Central Florida for the preparation of a Chapter 7 petition, schedules, and statement of affairs is $50," with an additional $50 if retyping was required due to no fault of the preparer. *Id.* at 369. No credible evidence was presented at the hearing on the Motion that now would alter that conclusion.

In the past, bankruptcy pleadings were prepared manually on typewriters. In today's computer age, everyone relies on computer software to accomplish the task more efficiently. The user enters the data in the appropriate form fields. The program does all the calculations, completes duplicate entries, and prints out the com-

pleted pleading. If anything, the effort required to prepare bankruptcy pleadings has shrunk significantly since the days of the typewriter and correction fluid. However, other costs, such as labor and overhead, may have increased.

The affidavits offered by the Respondent simply do not address these types of costs or explain why petition preparers should receive increased compensation. (Respondent's Exhibits Nos. 1 and 2.) Certainly, the Respondent has not introduced sufficient evidence to justify a fee of $275 for merely preparing a simple set of bankruptcy pleadings. Consistent with the prior ruling in *Cochran,* a reasonable fee for the services provided by the Respondent to the Debtor is $50.

*Damages.* Section 110(h)(2) of the Bankruptcy Code provides that the bankruptcy court shall order the immediate turn over to the chapter 7 trustee of any fee found to be in excess of the value of services rendered for the documents prepared. Here, a reasonable fee is $50. The Debtor paid $225 too much. The Respondent immediately must return the excessive portion of $225 to the Trustee in this case. If the Respondent fails to turn over the funds within 30 days of the service of this order, additional fines shall be assessed.

 In addition, the Respondent has committed a fraudulent and deceptive act by failing to list in her Disclosure of Compensation the entire amount of compensation paid to her by the Debtor. Pursuant to Section 110(i)(1), the bankruptcy court shall certify that fact to the district court and the district court may order damages. Pursuant to Section 110(i)(2), when a trustee moves for damages on behalf of the debtor, as in this case, the bankruptcy petition preparer shall pay minimum damages of $1,000 plus reasonable attorneys' fees and costs. The Court finds reasonable attorney fees in this case are $1,500. Accordingly, the Court recommends that the District Court find that the Respondent committed a fraudulent and deceptive act, that the Trustee is entitled to receive minimal damages of $1,000, and that the District Court award attorney fees in the amount of $1,500.

*Conclusion.* Respondent received an excessive and unreasonable fee of $275 for services provided to the Debtor. She must turn over the excessive portion of $225 to the Trustee immediately upon service of this order. Failure to timely turnover the monies will result in additional fines. In addition, the Bankruptcy Court certifies to the District Court the recommendation that the Respondent has violated Section 110(h) of the Bankruptcy Code by fraudulently and deceptively failing to disclose receipt of fees paid by the Debtor to her within the 12 months immediately prior to filing the case. Damages in the amount of $1,000 and attorney fees in the amount of $1,500 are recommended awards for this violation. A separate order consistent with these Findings of Fact and Conclusions of Law shall be entered together with an appropriate certification to the District Court.