**In re Martha STEWARD, Debtor.**

**Ira Bodenstein, U.S. Trustee, Plaintiff,**

**v.**

**Anson B. Shareef, Defendant.**

**Bankruptcy No. 04 B 09265.**

**Adversary No. 04 A 02333.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 23, 2004.

Richard C. Friedman, Chicago, IL, Attorney for Plaintiff.

Anson B. Shareef, pro se.

## MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

The Court conducted an evidentiary hearing on June 29, 2004, to adjudicate the U.S. Trustee's actions maintained under 11 U.S.C. § 110 against bankruptcy petition preparer ("BPP") Anson B. Shareef ("Shareef") in the bankruptcy cases of Chapter 7 debtors Yvonne Pritchett and Martha Steward. The actions are entitled "United States Trustee's Motion for Order Directing Refund of Fee of Bankruptcy Petition Preparer and to Impose Fine" in the Pritchett case and "Complaint for Return of Excessive Fees, to Impose Fines and for Injunctive Relief" in the Steward case. The facts and circumstances in each case being similar, the matters were tried together. The action in the Steward matter, though, is brought by way of adversary proceeding rather than by motion because it seeks permanent injunctive relief against the defendant. Fed. R. Bankr. Pro. 7001(7); *cf.* 11 U.S.C. § 110(h)(3).

### Background

Debtors Pritchett and Steward commenced their Chapter 7 cases with voluntary *pro se* petitions that were filed on March 9, 2004, prepared by the Anson Shareef Independent Paper Service, and delivered to the federal courthouse by the Elijah Muhammad Carrier Service. Both Shareef and Muhammad operate out of the same office located at 16710 Richmond Street, Unit 2, Hazel Crest, Illinois 60429. Shareef provides services as a nonlawyer to people seeking bankruptcy relief, divorces, and recovery in small-claims matters as well as to those seeking to incorporate and establish a power of attorney. (Pl.Ex.1.)

The case trustee in each Chapter 7 case filed a no-asset report.

In past motions brought under § 110 against Shareef, three bankruptcy judges in this district have signed orders directing him to return to the applicable debtor or trustee the portion of his petition-preparation fee that exceeded $150, which was deemed a reasonable amount for a nonlawyer performing strictly nonlegal services relating to the typing of a bankruptcy petition. In an order dated October 29, 2003, Judge Doyle previously found that Shareef violated § 110(g)(1) and charged an excessive fee under § 110(h)(2). In an order dated December 10, 2003, Judge Sonderby found that Shareef charged an excessive fee under § 110(h)(2) but allowed him to retain the excess of $275 if Shareef agreed to collect no more than $150 in future cases, which he agreed to do. In an order dated as recently as February 25, 2004, the undersigned judge found that Shareef charged an excessive fee under § 110(h)(2) that was $355 more than the value of the nonlegal services provided in that case.

In the Chapter 7 cases of debtors Steward and Pritchett, the U.S. Trustee has made a variety of continuing legal challenges to Shareef's conduct under various subsections of § 110 of the Bankruptcy Code. The facts will be further developed when relevant to each of those subsections.

### 11 U.S.C. § 110(h)

Section 110(h) of the Bankruptcy Code provides in relevant part:

> (h)(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.
>
> (2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in

paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

(3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2).

11 U.S.C. § 110(h)(1)-(3).

This section does not imply that a BPP will be able to receive compensation for all or even any of the services a BPP performs. The Bankruptcy Code leaves the question of whether the preparation of a bankruptcy petition and related documents constitutes the unauthorized practice of law to state law. *See* 11 U.S.C. § 110(k); *In re Landry,* 250 B.R. 441, 444–45 (Bankr.M.D.Fla.2000); *In re Alexander,* 284 B.R. 626, 632 (Bankr.N.D.Ohio 2002); *In re Haney,* 284 B.R. 841, 848 (Bankr. N.D.Ohio 2002). Sometimes the act of merely filing a court document on behalf of someone else may amount to the unauthorized practice of law. *See generally Alba v. Tighe (In re Shoup),* 307 B.R. 164, 168 (C.D.Cal.2004); *Alexander,* 284 B.R. at 632. Generally speaking, though, in jurisdictions where BPPs are allowed to complete bankruptcy documents as a nonlegal service, they can sell sample legal forms, photocopy the completed forms, supply very basic information about court locations and filing fees, and "provide secretarial services to type bankruptcy forms for clients, as long as the typists do no more than copy the written information furnished by clients." 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.09, at 110–15, ¶ 110.12, at 110–20 to –21 (15th ed. rev.2004); *see also Scott v. United States Tr. (In re Doser),* 292 B.R. 652, 660–61 (D.Idaho 2003); *Landry,* 250 B.R. at 445; *Alexander,* 284 B.R. at 635–36; *In re Jones,* 227 B.R. 704, 704 n. 1 (Bankr.

S.D.Ind.1998); *United States Trustee v. PLA People's Law–Arizona (In re Green),* 197 B.R. 878, 880 (Bankr.D.Ariz.1996). In contrast, they cannot do the following: assist debtors in selecting information to fill out bankruptcy documents, explain the definition of legal terms, recommend which exemptions should be claimed, correct mistakes and omissions in the bankruptcy documents, contact creditors, or point the debtor to relevant sections of legal publications containing answers to their questions. *See In re Doser,* 281 B.R. 292, 306– 07 (Bankr.D.Idaho 2002), *affirmed,* 292 B.R. 652 (D.Idaho 2003); *Hannigan v. Marshall (In re Bonarrigo),* 282 B.R. 101, 106 (D.Mass.2002); *Landry,* 250 B.R. at 444–45; *Alexander,* 284 B.R. at 636–38; *Jones,* 227 B.R. at 704 n. 1; 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.09, at 110–15, ¶ 110.12, at 110–20 to – 21 (15th ed. rev.2004). The type of services for which Shareef is actually eligible for compensation under state law are, furthermore, quite limited and in some cases have been found to have a reasonable value between $25 and $150, while in other cases they were determined to be of "dubious" value, zero value, or negative value. *Alexander,* 284 B.R. at 635, 637–38 & n. 2; 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.09, at 110–15 (15th ed. rev.2004); *e.g. Landry,* 250 B.R. at 446 ($50 limitation); *Doser,* 281 B.R. at 315–18 & n. 24($90), *affirmed,* 292 B.R. 652; *Bonarrigo,* 282 B.R. at 105–07($40); *Jones,* 227 B.R. at 704 n. 1 ($140). The $150 that Shareef has been permitted to collect from soon-to-be debtors is generous in light of the case law.

█ The evidence presented at the evidentiary hearing indicated that in each of the two present cases, Shareef collected a total of $584 from each debtor. As the receiver of petition-preparation fees, Shareef has the burden of proving that any fee

charged is reasonable when compared to the value of services provided. *See In re Doser*, 281 B.R. 292, 313 (Bankr.D.Idaho 2002), *affirmed*, 292 B.R. 652 (D.Idaho 2003); *In re Alexander*, 284 B.R. 626, 634 (Bankr.N.D.Ohio 2002) (analogizing the burden-of-proof issue to the same issue for attorneys' fees under § 329(b) of the Bankruptcy Code). This burden is justified because "[t]he charging of a fee which is in excess of the value of a BPP's properly limited services can, in and of itself, mislead debtors into believing that they are receiving (or are entitled to receive) services in excess of what § 110 actually allows." *Doser*, 281 B.R. at 313–14, *affirmed*, 292 B.R. 652.

Shareef's defense to the U.S. Trustee's § 110(h) actions is that the extra $434 was for the payment of additional services and expenses that both he and another person for whom he appears to be acting as an agent are providing. Aside from the permitted $150 fee, these additional fees and expenses in each case included the following: a $150 fee for Shareef's preparation of a power-of-attorney form (Def.Ex. C), a $75 fee for the carrier service to deliver each bankruptcy petition to the federal courthouse (Def.Ex.A–1), and $209 for the same carrier service to pay the court clerk's filing fee for each Chapter 7 case (Def.Ex.A–2). In each of the two instances, Shareef himself received the entire $584, kept $300 for himself, and gave the remaining $284 to the carrier service, who in turn kept the $75 not needed to pay the filing fee. Debtor Steward signed three separate receipts: two showing that the carrier service received $75 and $209 for services and court costs, respectively, and one showing that Anson Shareef IPS received two separate sums of $150 for a bankruptcy service and a power-of-attor-

ney service. The carrier service and Shareef operate out of the same office but have no formal partnership or common business entity under which they operate their businesses.

In essence, Shareef began offering a package of services costing $584 (or $375 exclusive of the filing fee) after three court orders limiting him to a fee no greater than $150 in each case and one order finding that he had illegal contact with the $209 filing fee. The extent to which each of the debtors felt pressured to purchase these additional services as part of a package or were even made aware that they could refuse them for much cheaper options is also unclear, as each one failed to appear and testify at the evidentiary hearing in violation of prior orders of this Court.[1] *Cf. In re Jones*, 227 B.R. 704, 704 n. 1 (Bankr.S.D.Ind.1998) (referring to a prior agreed order under which the BPP could "charge the actual cost of any credit report obtained for a customer, and any additional amount charged non-bankruptcy customers for credit reports, provided that customers are advised that they can procure copies elsewhere and that the credit report is optional"). Something more suspicious is the reason the debtors felt compelled to pay $75 for a carrier service rather than to file the petitions themselves for the price of the chosen transportation or to mail them to the federal courthouse for approximately $1. If these debtors are truly in need of Chapter 7 relief, the approximate $70 price difference would seem to be a significant expense for a luxury service that they could and should forego. It is also unclear whether Shareef and the carrier service have an informal agreement to split any of their fees, although such an agreement would be material here since the ultimate receipt of any portion of the

---

1. The case trustee or the U.S. Trustee should consider in each of these cases whether revocation of discharge would be warranted under § 727(a)(6)(A) or (C) and § 727(d)(3).

$75 would permit Shareef to evade the $150 limitation on the price of his petition-preparation service. It is clear, however, that the defendant herein and the carrier service shared office space, business accommodations, and referrals to the extent that Shareef was able to generate a rather generous fee for the carrier service, which was in turn able to generate an additional $150 power-of-attorney fee for Shareef's BPP service by requiring such a form from the debtor before delivering the petition. This arrangement, in practical effect, allowed Shareef to evade prior $150 limitations on the fee for his BPP services. These facts in turn permit the inference that some unwarranted pressure or misleading presentations caused the debtors to use the BPP service, the carrier service, and the power-of-attorney service regardless of whether each and every service was necessary or even remotely beneficial to them.

In situations where the BPP collects a fee for a variety of related services that include the typing of the petition, § 110 of the Code should be liberally construed to ensure that the substance of the whole transaction, not just the form thereof, complies with the law.[2] For instance, a BPP should not be able to charge $1 for preparing the bankruptcy petition and $800 for delivering or mailing it to the bankruptcy court clerk, as a huge portion of the $800 should in fact be allocated as part of a *de facto* fee for preparing the bankruptcy petition. In *In re Landry*, 250 B.R. 441 (Bankr.M.D.Fla.2000), for instance, the BPP charged a total of $275, only $50 of which was purportedly for the actual preparation and supply of the bankruptcy documents; the remaining $225 was for membership in a "legal document preparation club." *Id.* at 443–44. The court determined that the debtor received no true additional benefit from the club and collapsed the transaction, finding that "[t]he Club is a charade designed to increase the fees paid to the petition preparer without directly characterizing the payment as a fee for preparing bankruptcy pleadings." *Id.* Furthermore, in a situation like the present one where the BPP physically receives a sum of money for related services to be performed both by the BPP and someone for whom the BPP is acting as an agent, the Court will use § 110(h) to scrutinize the sum of money, the package of services, and the relation between the two. Here, the questionable fees and costs include the $150 power-of-attorney fee, the $75 carrier-service fee, and the $209 filing fee, the first two of which raise different legal issues than the third.

■ As far as the $150 power-of-attorney fee is concerned, Shareef has not been able to adequately explain why this service was necessary or how it actually benefitted each debtor. Shareef claims that the carrier service requires it for delivering forms to the federal courthouse. Whether this requirement truly originated with the carrier service, was fabricated by Shareef, or resulted from collusion between the two, it has no apparent bankruptcy purpose.

---

**2.** Compare *In re Doser*, 281 B.R. 292 (Bankr.D.Idaho 2002), *affirmed*, 292 B.R. 652 (D.Idaho 2003), where Judge Pappas noted how the local rules in another district permit a maximum fee for BPP services of $125, "which includes any and all expenses such as photocopying, messenger or courier charges, postage, and telephone charges." *Id.* at 317 n. 25. Even after allowing the BPP to charge the debtor for expense reimbursement for photocopying and postage costs apart from expenses deemed allocable to overhead, Judge Pappas scrutinized the amount of those extra charges for reasonableness. *See id.* at 318–19; *see also In re Jones*, 227 B.R. 704, 704 n. 1 (Bankr.S.D.Ind.1998) (scrutinizing and limiting additional BPP charges for expenses not included as part of overhead, including photocopying and ordering credit reports).

Nonmedical powers of attorney are generally granted to those in relationships of high trust so that the grantee can, without advance notice, execute on behalf of the grantor documents for transactions pertaining to the grantor's money or other property, insurance contracts, retirement plans, tax liabilities, litigation of claims, and/or borrowing obligations. *See generally* Statutory Short Form Power of Attorney for Property Law, 755 Ill. Comp. Stat. Ann. 45/3–2 to 3–4 (West 1998). One would be needed here if a debtor were authorizing someone else to execute (and not just prepare for signing) a voluntary bankruptcy petition on her behalf. Moreover, the BPP himself—that is, the person typing the debtor's petition—cannot legally "execute any document on behalf of a debtor." 11 U.S.C. § 110(e)(1). Moreover, a transportation service would only require a very basic contract and not a power of attorney, because it would not be entering into new transactions or contracts as Steward's or Pritchett's agent. It would simply be delivering a service in exchange for a fee. Ironically, a power of attorney granted to the carrier service instead of a contract would actually be inadequate for each debtor to obtain the desired legal result, because a typical power of attorney does not create any duty to exercise the granted power for the grantor's benefit at all, *see* 755 Ill. Comp. Stat. 45/3–4, whereas a contract would at least create a contractual duty to deliver bankruptcy documents on behalf of the soon-to-be debtor. The $150 power-of-attorney fee is disallowed in each case pursuant to § 110(h)(2) and must be turned over to the trustee, the fee being part of a scheme to evade prior orders restricting Shareef to a maximum of $150 per bankruptcy filing. *Cf. Ferm v. United States (In re Crowe)*, 243 B.R. 43, 49–50 (9th Cir. BAP 2000) (a BPP who had been enjoined from practicing as such began selling bankruptcy instructional books, which the court found to be a "front" for services subject to regulation under § 110), *affirmed*, 246 F.3d 673 (9th Cir.2000).

█ The $75 fee is a more difficult issue because nothing in the Bankruptcy Code specifically restricts a debtor from independently contracting with someone other than a BPP for the delivery of prepared bankruptcy documents, including the filing fee, to a federal courthouse. The question here is whether the $75 fee was truly independent from each debtor's transaction with Shareef or whether it was so intertwined that the Court may scrutinize it as part of the package of services received.

The record here supports the latter conclusion. As previously mentioned, each debtor paid Shareef at one time a sum of money that included the $75 at issue as well as his own $300 fee. Shareef could have but did not prove in defense that either debtor could have foregone the $75 carrier-service fee or that he informed them that they had any option other than the $584 package he offered. Shareef also passed this fee along to someone else who coincidentally operated out of the same office, and, more importantly, that $75 transaction also happened to generate another $150 fee for Shareef's preparation of an unnecessary power-of-attorney document. Thus, on the present record, the carrier-service contract is intertwined with the BPP transaction that is subject to scrutiny under § 110(h)(2). The Court further finds that the $75 delivery fee is unreasonable, especially in light of the debtor's other two options described above. Without affirmative evidence showing what other document-transportation businesses would charge for similar services in this community, the Court cannot conclude what a reasonable fee would be. It will therefore disallow the entire

$75 fee in each case and require Shareef to turn over the amount to the trustee. The Court has no personal jurisdiction over the carrier service at this time, so it cannot order it to return the two $75 fees that Shareef collected from Steward and Pritchett. As between the carrier service and Shareef, Shareef took the risk that the agreement he was executing on behalf of the carrier service would later be deemed an illegal and void contract and that a refund of the purchase price Shareef collected would be required if the transaction were collapsed.

■ Finally, in justifying the $375 fee charged, Shareef has not alternatively produced any evidence concerning the amount of time he expended in either case, the hourly rate that $375 would yield for that amount of time, his overhead business expenses, or why any of this information might justify the overall fee in unusual cases or in these two cases. *See In re Alexander*, 284 B.R. 626, 636 (Bankr. N.D.Ohio 2002) (comparing 11 U.S.C. §§ 329(b), 330(a) to § 110(h)); *e.g., In re Doser*, 281 B.R. 292, 315–18 (Bankr.D.Idaho 2002), *affirmed*, 292 B.R. 652 (D.Idaho 2003); *In re Bonarrigo*, 282 B.R. 101, 107 (D.Mass.2002).

### 11 U.S.C. § 110(g)

■ Shareef's receipt of the $209 filing fee as part of the $584 raises an altogether different legal issue, because each debtor received a clear benefit, the initiation of a Chapter 7 case, as a result of paying Shareef the money. Rather, his receipt of the money implicates § 110(g)(1), which prohibits a BPP from handling any of the filing fees for the bankruptcy petition he prepares. The two debtors testified at their § 341 creditor meetings that they paid Shareef a total of $584 for the services relating to each of their Chapter 7 cases. Shareef admits that this amount

does include the $209 but contends that he was merely a forwarding agent for the carrier service, which is not part of his BPP operation.

Shareef relies on *In re Reed*, 208 B.R. 695 (Bankr.N.D.Cal.1997), which construes § 110(g)(1) narrowly in holding that the Bankruptcy Code permits a BPP to handle and/or deliver the debtor's negotiable instrument payable to the clerk of the bankruptcy court in the amount of the filing fee, because such a payment form would not permit the BPP to commingle the funds with his or her own or to profit from overstating the filing fee. *See id.* at 696–97. *Reed* and other published decisions accurately identify the practical problem of, on one hand, barring a BPP from holding a check or money order payable to the court clerk for delivery to such clerk, but on the other hand, not barring a BPP from filing the bankruptcy petition and related documents—which § 110(i)(1) even implies is permissible. *See id.* at 697; *cf. In re Shoup*, 307 B.R. 164, 168–69 (C.D.Cal. 2004); *In re Alexander*, 284 B.R. 626, 631–32 (Bankr.N.D.Ohio 2002); *In re Doser*, 281 B.R. 292, 311 (Bankr.D.Idaho 2002), *affirmed*, 292 B.R. 652 (D.Idaho 2003). *Contra In re Jones*, 227 B.R. 704, 705–06 (Bankr.S.D.Ind.1998) (concluding that § 110 prohibits a BPP from delivering documents to the court); *In re Green*, 197 B.R. 878, 881 (Bankr.D.Ariz.1996) (same). In other words, the BPP could be a delivery agent for the bankruptcy petition and related documents but not for the filing fee, so the *pro se* debtor would need to travel to the court house or mail the petition and filing fee even if he or she wanted the BPP to deliver a payment form that could not be commingled with the BPP's other funds.

■ Policy considerations notwithstanding, the statute is clear on what the law actually precludes: the BPP "shall not col-

lect or receive any payment ... on behalf of the debtor for the court fees in connection with filing the petition." 11 U.S.C. § 110(g)(1). This language is both broad and clear, *see In re Alexander*, 284 B.R. 626, 633 (Bankr.N.D.Ohio 2002); 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.07, at 110–13 (15th ed. rev.2004), and thus would preclude even an agency relationship whereby the BPP is a conduit or caretaker for a negotiable instrument that the debtor instructs the BPP to deliver to the bankruptcy court clerk. Due to the statutory clarity, *Reed's* primary conclusion has been rightfully rejected by virtually every court addressing its holding. *See In re Doser*, 281 B.R. 292, 310–12 (Bankr.D.Idaho 2002); *In re Haney*, 284 B.R. 841 (Bankr.N.D.Ohio 2002); *In re Alexander*, 284 B.R. 626, 632–33 (Bankr. N.D.Ohio 2002); *El–Amin v. Bodenstein*, 2003 WL 291897 (N.D.Ill.2003); *In re Shoup*, 290 B.R. 768 (Bankr.C.D.Cal.2003), *affirmed*, 307 B.R. 164, 167, 170–71 (C.D.Cal.2004);[3] *see also In re Bonarrigo*, 282 B.R. 101, 106–07 (D.Mass.2002); *In re Jones*, 227 B.R. 704, 705 (Bankr.S.D.Ind. 1998); *In re Green*, 197 B.R. 878, 879–81 (Bankr.D.Ariz.1996). It is consequently irrelevant whether Shareef accepted $209 from the debtor for delivery to the third-party carrier service (and then to the clerk) or whether he accepted it for delivery directly to the court clerk. What matters is that he collected or received the funds in any form, acts which *El–Amin* correctly interpreted to mean "simply taking possession or delivery." *El–Amin*, 2003 WL 291897, at *1. Congress had the authority to enact such a broad prohibition, so the practical problem resulting when a BPP cannot file the initial voluntary petition because he cannot handle the filing fee is irrelevant to interpreting § 110(g). Also noteworthy is the fact that scenarios do exist in which a BPP would be able to file bankruptcy documents with a bankruptcy court without having to handle the filing fee for the case. If the debtor has already filed the initial petition and the accompanying fee, the BPP could then appropriately deliver any subsequent schedules or statements that the debtor needs to file to allow the case to proceed without dismissal. *See In re Doser*, 281 B.R. 292, 311 (Bankr.D.Idaho 2002), *affirmed*, 292 B.R. 652 (D.Idaho 2003); *see also* Fed. R. Bankr.Pro. 1007(c), (f) (allowing schedules and statements to be filed within 15 days of the voluntary petition date if the petition was filed with a list of all creditors and with the individual debtor's social security number). *But cf. Jones*, 227 B.R. at 705–06; *Green*, 197 B.R. at 881.

The BPP Shareef admitted in court that he physically received the court fee. This was in violation of § 110(g)(1), even if just for the limited period of time before forwarding the $209 to the allegedly independent carrier service operating out of the same office. Because Shareef has been found to have violated § 110(g)(1) as far back as October 29, 2003, and has continued to do so in both cases at bar, the maximum fine of $500 will be imposed against him in each of the two cases.

### 11 U.S.C. § 110(b)

The Bankruptcy Code provides that "[a] bankruptcy petition preparer who prepares a document for filing shall sign the

---

**3.** Although some of these decisions further analyze the legislative history and the policies expressed therein in support of their holdings, such efforts are almost always unnecessary where, as here, the statute's language is unambiguous. *See Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *In re Haney*, 284 B.R. 841, 847 (Bankr.N.D.Ohio 2002) (citing *Vergos v. Gregg's Enterprises*, 159 F.3d 989, 990 (6th Cir.1998)); *Milman v. Box Hill Systems Corp.*, 192 F.R.D. 105, 108 (S.D.N.Y.2000).

document and print on the document the preparer's name and address." 11 U.S.C. § 110(b). A "document" clearly does not refer just to the initial voluntary petition or to the entire group of documents as one whole; it refers to "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title," 11 U.S.C. § 110(a)(2), which would include at least the following distinct sets of papers: the list of creditors, the schedules of assets and liabilities, the schedule of current income and expenses, the statement of financial affairs, and the statement of intent regarding property of the estate securing consumer debts. *See* 11 U.S.C. § 521(1)-(2); *see also* 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.03, at 110–8 (15th ed. rev.2004). Most if not all of the official forms for each of these document sets contain a conspicuous section at the end thereof for the BPP to provide the three pieces of information that § 110(b)(1) requires: the printed name, signed name, and address. *See* 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.03[1], at 110–9 (15th ed. rev.2004).

■ In the Steward case, Shareef prepared the statement of financial affairs, inaccurately typing "n/a" in the "certification and signature" section concluding the document. In paragraph nine of the same document, he also inaccurately typed that Steward paid him no money for "relief under the bankruptcy law or preparation of a petition in bankruptcy." He also prepared the statement of intention, the voluntary petition, and the various schedules but left the concluding BPP disclosure section blank in all three situations.

In the Pritchett case, Shareef violated § 110(b)(1) by failing to list his address on the voluntary petition, by failing to list any information whatsoever on the schedules and on the statement of intention, and by typing "n/a" on the BPP disclosure section concluding the statement of financial affairs. In paragraph nine of the last document, he inaccurately typed that Pritchett paid him no money for "relief under the bankruptcy law or preparation of a petition in bankruptcy."

Given Shareef's repeated carelessness in complying with § 110(b)(1) in the Steward case and in other cases, the Court will impose the maximum fine of $500 against him in the Steward case.

### 11 U.S.C. § 110(c)

■ According to the Bankruptcy Code, "A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document," and that number "shall be the Social Security account number of each individual who prepared the document or assisted in its preparation." 11 U.S.C. § 110(c)(1)-(2). Just as with § 110(b), the law imposes this requirement on every single set of § 521 documents, not just one or two sets.

Shareef violated § 110(c)(1)-(2) four times in the Steward case by leaving blank (or typing "n/a" for) the same four "certification and signature" sections in which he also failed to list the requisite § 110(b) data.

Given Shareef's repeated carelessness in complying with § 110(c)(1)-(2) in the Steward case and in other cases, the Court will impose the maximum fine of $500 in the Steward case.

### 11 U.S.C. § 110(j)(1)-(2)

The Bankruptcy Code provides in relevant part as follows:

(1) ... [T]he United States trustee in the district in which the bankruptcy petition preparer ... has conducted business ... may bring a civil action to

enjoin a bankruptcy petition preparer from ... further acting as a bankruptcy petition preparer.

(2) (A) In an action under paragraph (1), if the court finds that—

(i) a bankruptcy petition preparer has—

(I) engaged in conduct in violation of this section ...;

or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title ..., the court may enjoin the person from acting as a bankruptcy petition preparer.

11 U.S.C. § 110(j)(1)-(2). Thus, in order to bar a BPP from further practice, the U.S. Trustee must show recurring violations of § 110, recurring unfair or deceptive conduct, or both; he must further show that this behavior has been so persistent that an injunction prohibiting specific conduct would be insufficient.

■ After Judge Sonderby's December 2003 order, Shareef agreed to generally comply with § 110 in the future. Since then, Shareef has repeatedly violated § 110(b)(1) and (c)(1)-(2) by failing to disclosure information on the bankruptcy petitions he prepares, as detailed above. In addition to the Steward and Pritchett cases, Shareef prepared the voluntary petition in the Gregory case (Case # 04B16671) and did not disclose any of the required BPP data on it, although he allegedly did not prepare any of the other related documents in that case.[4] Further, in the Lawani case (Case # 04B16673), Shareef prepared the statement of financial affairs for compensation but again did not sign the document as a BPP, did not list his social security number, and typed that the debtor made zero payments for "relief under the bankruptcy law or preparation of a petition in bankruptcy."[5]

---

4. Shareef's brother Omar Shareef allegedly prepared the rest of the documents, and Omar accordingly filed the required official form for a BPP's disclosure of compensation, *see* Fed. R. Bankr.Pro.2016(c); 6 West's Fed. Forms, Bankruptcy Courts § 9892 (3d ed.), which declares under penalty of perjury that "no other person has prepared for compensation a document for filing [in] connection with this bankruptcy case except as listed below." The statement would apparently not constitute perjury only if Anson Shareef received none of the compensation whatsoever for preparing the voluntary petition in the Gregory case.

5. In the Gregory and Lawani cases, Shareef's brother, Omar Shareef, who is also a BPP, signed the "disclosure of compensation" statement required by § 110(h)(1) and Bankruptcy Rule 2016(c) and allegedly prepared both debtors' schedules, the statement of financial affairs in the Gregory case, and the voluntary petition in the Lawani case; these documents prepared by Omar likewise do not contain any of the required BPP disclosures. Defendant Anson Shareef delivered these papers to the federal courthouse and filed them with the bankruptcy clerk on behalf of his brother.

If each brother prepared some of the documents in any one case and received at least a portion of the compensation, then the official forms must contain disclosures listing the required data for both brothers, not just one, and listing which brother prepared which document. *See* 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.03, at 110–8 to – 10, ¶ 110.08, at 110–14 (15th ed. rev.2004). A situation like this, where two relatives with no formal business arrangement or partnership each prepare some but not all of the various

Judge Doyle's October 2003 order fined Shareef the maximum amount for violating § 110(g)(1), and he twice violated such provision again in March 2004 in the Steward and Pritchett cases.

Finally, each of the three aforementioned orders required Shareef to return fees in excess of the value of the services he provided under § 110(h)(2) and limited him to $150 in each case. In response to the $150 limitation and the concomitant findings of excess, Shareef referred at least two debtors to someone else in his office who charges an excessive fee for delivery services, and that person in turn generated an excessive fee for Shareef's preparation of an unnecessary power-of-attorney document. In other words, in response to the prior limitations imposed under § 110(h), Shareef engaged in an unfair and deceptive trade practice in order to evade the $150 limitation. *Cf. In re Landry*, 250 B.R. 441, 443–44, 446 (Bankr. M.D.Fla.2000). This conclusion is consistent with the following exposition on § 110's aim to protect consumers from a BPP's unfair and misleading trade practices:

> Intent to defraud or to violate the law need not be proved. Indeed, the preparer's lack of knowledge of the law is usually what renders the preparer's services deficient. The terms "unfair" and "deceptive" taken from the Federal Trade Commission Act are liberally construed in favor of consumers and have well-established meanings under that Act. . . . It is fraudulent, unfair or deceptive for a petition preparer to . . . fail to disclose the true compensation received.

2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.10[1], at 110–16 (15th ed. rev.2004). In this case, the "true" compensation paid to Shareef for his services as a BPP was $300, half of which was disguised as a fee for another valueless service.

Another bankruptcy court's broad injunction prohibiting a BPP from continuing to practice as such was affirmed where the BPP had continued to violate both the statute and a prior agreed order in another bankruptcy case. *See In re Bonarrigo*, 282 B.R. 101, 104, 107–08 (D.Mass.2002). As a BPP, Shareef has shown at worst a blatant disregard for the law or, at best, extreme carelessness in conforming his business conduct to comply with several of the statutory requirements and with the December 10, 2003 agreed order implementing those requirements in bankruptcy case number 03B33901. As such, the U.S. Trustee's request for an injunction permanently barring Shareef from operating as a BPP—or assisting in any way someone acting in that capacity—will be granted. Shareef will further be required to remove from his business card's list of available services the word "bankruptcy."

sets of documents, highlights the importance of the disclosure requirements of § 110, because creditors and the court will otherwise be confused about who generated a document and transcribed the debtor's information.

Standing alone, however, Shareef's delivery and filing of bankruptcy documents prepared by either himself or another BPP would not violate § 110. Subsection 110(g)(1) merely prohibits the BPP from handling or possessing the filing fee, while no part of § 110 prohibits a BPP from filing the petition on behalf of the debtor or on behalf of another affiliated BPP. *See In re Alexander*, 284 B.R. 626, 631–32 (Bankr.N.D.Ohio 2002). *Contra In re Jones*, 227 B.R. 704, 705–06 (Bankr. S.D.Ind.1998); *In re Green*, 197 B.R. 878, 881 (Bankr.D.Ariz.1996). In fact, as the *Reed* case correctly states, "§ 110(i)(1) implicitly recognizes that it is not improper for a petition preparer" to take responsibility for delivering only the bankruptcy petition and related papers to the court clerk. *In re Reed*, 208 B.R. 695, 697 & n. 4 (Bankr.N.D.Cal.1997).

184

The foregoing constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052. A separate judgment and order consistent with the opinion will be entered in each of the two pending matters—the motion in the bankruptcy case and the adversary proceeding—in compliance with Bankruptcy Rule 9021.